WILLIAM QUINN, Plaintiff-Appellant, v. SIGMA RHO CHAPTER OF BETA THETA PI FRATERNITY, Defendant-Appellee.

Fourth District   No. 4—86—0538

Opinion filed April 8, 1987.—Modified on denial of rehearing June 1, 1987.

GREEN, J., specially concurring.

John F. Bramfeld, of Phebus, Tummelson, Bryan & Knox, of Urbana, for appellant.

D. Cameron Dobbins, of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellee.

JUSTICE LUND delivered the opinion of the court:

Plaintiff, William Quinn, appeals from an order of the circuit court of Champaign County entered July 17, 1986, which dismissed his third amended complaint on the grounds that it failed to state a cause of action.

Before we discuss the substance of the pleading, we first comment on the drafting of the order of dismissal and the third amended complaint. We bear in mind that this appeal stems from plaintiff's attempt to expand the law of negligence and that plaintiff and defendant may have encountered difficulty with phraseology. The trial court found that the "only cause of action possibly stated in the Plaintiff's Third Amended Complaint is based on the special relationship of voluntary custodian-protectee and that all allegations of said Third Amended Complaint not directed towards that relationship should be stricken." The court then stated as follows:

"Therefore, the Plaintiffs' Third Amended Complaint is hereby dismissed and the Plaintiff granted leave to file a further amended complaint within 14 days of the entry of this Order; should the Plaintiff elect not to file a further amended complaint, the Court expressly finds that there is no just cause for delay of enforcement or appeal."

Plaintiff filed his notice of appeal on August 12, 1986, within 30 days of the July 17, 1986, order, and after the 14-day leave to amend period had expired. Plaintiff did not file amendments following the July 17, 1986, order. While there appears to be a conflict between the finding provision and the ordering provision of the July 17, 1986, order, we consider the order a final disposition of the cause and hear the appeal on its merits.

We are also critical of the draftsmanship of the third amended complaint because it appears that plaintiff may be attempting to include more than one cause of action in one count of the third amended complaint. We recognize the rule that each count of a complaint should allege only one cause of action. (Ill. Rev. Stat. 1985, ch. 110, par. 2—603(b); *Prado v. Evanston Hospital* (1979), 72 Ill. App. 3d 622, 390 N.E.2d 1270.) As plaintiff urged at oral argument, he considers the complaint to allege a cause of action based on simple common law negligence principles and also a voluntary custodian-protectee relationship. It would have been better for plaintiff to advance these theories in separate counts. Because of our holding herein, the error, if any, becomes harmless.

According to the pleaded facts, plaintiff was a pledge of defendant's and was required to participate in the defendant's initiation ceremony, "Pledge Dad Night," in order to become a member of the fraternity. Plaintiff alleges that, on the night of the incident, he was "18 years of age and was an inexperienced drinker, which fact was known or in the exercise of ordinary care should have been known by the defendant." As part of the ceremony, each pledge was directed to drink a 40-ounce pitcher of beer without letting the pitcher leave the pledge's lips or until the pledge vomited. Plaintiff complied. The complaint then alleges that "plaintiff became intoxicated and unable to properly care for himself."

After drinking the pitchers, the pledges were brought to a local tavern. On the way to the tavern, one of the active members of the fraternity asked if plaintiff had any important classes the next morning. Plaintiff replied, "No." The active member then directed plaintiff to drink from an eight-ounce bottle of whiskey. Plaintiff again complied. The complaint does not specify how much of the bottle he

drank, only that he drank from the eight-ounce bottle. At the tavern, the members of the fraternity purchased more liquor for the pledges.

The complaint alleges that, as a result of the evening of drinking, "plaintiff became extremely intoxicated and unconscious and was brought back to the defendant fraternity house by active members of the fraternity at approximately 1:00 a.m." Plaintiff was left on a hardwood floor to sleep off his intoxication. He slept until 2:30 p.m. the following afternoon, or some 13 to 14 hours. When he awoke, he was still in an intoxicated condition and could not properly use his hands or arms. He was taken to a hospital where his blood-alcohol content was measured. At 4 p.m., plaintiff had a reading of .25. Plaintiff then alleges that, at its peak, his blood-alcohol content was approximately .4 or "at near fatal levels." Plaintiff states that he "suffered neurological damage to his arms and hands necessitating the attention of a hospital, doctor, and physical therapist and causing partial disability."

As is evident from the complaint allegations, this cause arises from the fact that William Quinn became so intoxicated that he no longer could provide for his own welfare. The allegations of the complaint are sufficient to allege that the consumption of the intoxicating beverages was part of the fraternity's initiation ceremony. The allegations also establish the excessive use of the intoxicants. The question presented to us on appeal is whether the fraternity owed a duty to plaintiff with respect to requiring the commission of very dangerous acts, including the highly excessive consumption of intoxicants, as part of the initiation ceremony. In other words, if there is a duty on the part of fraternities and sororities to refrain from requiring participation in such acts, then the third amended complaint states a cause of action.

■■ Plaintiff argues that the complaint alleges a cause of action grounded in "simple common law negligence principles." In deciding a motion to dismiss, the court must view all the factual allegations as true and only consider the questions of law presented by the pleadings. (*Martin v. Palazzolo Produce Co.* (1986), 146 Ill. App. 3d 1084, 497 N.E.2d 881.) The elements of a simple common law negligence action are: "the existence of a duty on the part of the person charged to protect the complaining party from injury, a failure to perform or breach of that duty, and a consequent injury so connected with the failure to perform that such failure is the proximate cause of the injury." (28 Ill. L. & Prac. *Negligence* sec. 2, at 8 (1957) (Illinois Law and Practice); see also *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 456 N.E.2d 116; *Ogle v. Fuiten* (1983), 112 Ill. App. 3d 1048, 445

N.E.2d 1344.) In this case, the circuit court dismissed the complaint because of the difficulty in determining what duty defendant owed plaintiff. The existence of a duty is a matter of law to be decided by the court. (*Smith v. Rengel* (1981), 97 Ill. App. 3d 204, 422 N.E.2d 1146.) The existence of a duty is not dependent on foreseeability alone but on other factors such as the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing the burden on the defendant. *Lance v. Senior* (1967), 36 Ill. 2d 516, 224 N.E.2d 231; see also *Reed v. Danville Concrete Products. Co.* (1981), 102 Ill. App. 3d 205, 429 N.E.2d 605.

In asking us to acknowledge a cause of action in negligence, plaintiff asks us to draw perilously close to the extensive case law prohibiting common law causes of action for negligently selling alcohol. Our supreme court has recognized "that the common law provided no remedy for the mere sale of alcoholic liquor to the ordinary man, either on the theory that it was a direct wrong or on the ground that it was negligence." (*Cunningham v. Brown* (1961), 22 Ill. 2d 23, 29-30, 174 N.E.2d 153, 157.) The *Cunningham* court pointed out "the reason generally given for the rule is that the drinking, not the selling, is the proximate cause of the intoxication." (22 Ill. 2d 23, 30, 174 N.E.2d 153, 157.) In *Cunningham*, it was argued "that where a sale is made to one who is intoxicated or insane and the incapacity of the consumer to choose is known to the vendor, or should be known, then the sale and consumption are merged and in reality become the act of the seller and the proximate cause of the intoxication." (22 Ill. 2d 23, 30, 174 N.E.2d 153, 157.) The supreme court stated that the "argument has some merit" but denied a cause of action because no common law right existed. (22 Ill. 2d 23, 30, 174 N.E.2d 153, 157.) The legislature provided a right by statute, and the court was not required to create another remedy. Our courts have consistently followed the rule that there is no common law liability for the negligent sale of liquor in Illinois. *Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 442, 484 N.E.2d 1088, 1092.

■ The law in Illinois appears well settled that the legislative action in adopting the Dramshop Act (Ill. Rev. Stat. 1985, ch. 43, pars. 94 through 195) has preempted the field of liability relating to alcohol. (*Coulter v. Swearingen* (1983), 113 Ill. App. 3d 650, 447 N.E.2d 561.) It is also clear that this preemption extends to social hosts who might provide intoxicating beverages: adult to adult, adult to minor, and minor to minor. "The courts have been rigid in denying recovery on the theory of common law negligence." *Coulter v. Swearingen* (1983), 113 Ill. App. 3d 650, 654, 447 N.E.2d 561, 564.

As the cases involving alcohol indicate, there have been many arguments asking the courts to judicially abolish the common law immunities from liability, but such changes have been left for legislative action.

Plaintiff is careful to state that he does not argue a cause of action based on the Dramshop Act or any common law dramshop action. He attempts to distinguish the instant factual situation from the social host-guest relationship. Plaintiff emphasizes that defendant did more than simply furnish alcohol to him. In order to be initiated into the fraternity, defendant required him to drink to intoxication.

In arguing that the complaint states a cause of action based on negligence, plaintiff refers to statutory provisions. The practice of hazing is a Class B misdemeanor. (Ill. Rev. Stat. 1985, ch. 144, par. 221.) Hazing is defined as "any pastime or amusement, engaged in by students or other people in schools, academies, colleges, universities, or other educational institutions of this state, or by people connected with any of the public institutions of this state, whereby such pastime or amusement is had for the purpose of holding up any student, scholar or individual to ridicule for the pastime of others." (Ill. Rev. Stat. 1985, ch. 144, par. 222.) In addition, although not directly cited by plaintiff, the giving of alcoholic liquor to persons under 21 years of age and consumption of alcoholic liquor by persons under 21 years is prohibited by sections 6—16 and 6—20 of the Dramshop Act. Ill. Rev. Stat. 1985, ch. 43, pars. 131, 134a.

Plaintiff further points to the University of Illinois regulations prohibiting the consumption of alcoholic beverages by persons under the age of 21 on University controlled property. The defendant fraternity had certain internal guidelines prohibiting hazing-type activities, one of which included in its definition of hazing "chug-a-lugging" and "[f]orced or required consumption of *** alcoholic *** beverages." On the basis of the above statutes, rules and regulations, plaintiff would find defendant owed a duty to plaintiff to conduct an initiation ceremony free from unreasonable risk of harm.

In response, defendant primarily argues a defense based on intoxication and the social host-guest relationship. Defendant rephrases plaintiff's complaint into simply alleging a duty to prevent plaintiff's intoxication. Using the fact that the entire incident is based on plaintiff's intoxication, defendant urges the court to reject any broader duty pertaining to fraternity functions.

Defendant argues it had no duty to prevent plaintiff's intoxication. Defendant construes the relationship between plaintiff and defendant to be a social host-guest relationship, and directs us to the

multitude of cases denying liability against social hosts for furnishing intoxicating beverages.

██ █ We agree with the case authorities holding that the furnishing of intoxicating beverages to underage persons, such as plaintiff, does not create a legal duty. We feel, however, that we are faced with a situation which consists of more than the mere furnishing of alcohol. The facts, as alleged in plaintiff's amended complaint, describe a fraternity function where plaintiff was required to drink to intoxication in order to become a member of the fraternity. Even worse, according to the complaint, the alcohol content in plaintiff's body was "at or near fatal levels." We cannot close our eyes to the fact that the abuse illustrated in the present case could have resulted in the termination of life and that plaintiff was coerced into being his own executioner. Therefore, we hold that a legal duty was created and the complaint states a cause of action in negligence.

It is true that plaintiff could have avoided the situation by walking away from the fraternity. In that respect, plaintiff's actions in participating in the ceremony were voluntary. Yet, as the complaint alleges, membership in the defendant fraternity was a "much valued status." It can be assumed that great social pressure was applied to plaintiff to comply with the fraternity's membership "qualifications," perhaps to the extent of blinding plaintiff to any dangers he might face. To the extent that plaintiff acted willingly, liability can be transferred to him under principles of comparative negligence.

We do not allow a cause of action here without careful consideration of the nature of the duty. Using the factors found in *Lance v. Senior* (1967), 36 Ill. 2d 516, 224 N.E.2d 231, we believe the burden of such a duty is rightly placed on defendant. When required to consume such large amounts of alcohol, it is foreseeable and likely that injuries will occur. Even the injury alleged here is foreseeable. It is a small burden to guard against such injuries. The activity was clearly an illegal hazing activity and discouraged by defendant's own parent organization. Finally, we can think of no better party to bear the burden of plaintiff's injuries than the one that required him to sustain them. The result is then predictable. A fraternal organization, held in high esteem, is to be liable for injuries sustained when requiring those seeking membership to engage in illegal and very dangerous activities.

In order to narrowly construe this duty, we hold a cause of action exists in the instant case based on the following two factors. First, the fact that plaintiff was required to drink to intoxication. This sufficiently distinguishes the instant case from the social host-guest situa-

tion. The social pressure that exists once a college or university student has pledged into a fraternal organization is so great that compliance with initiation requirements places him or her in a position of acting in a coerced manner.

■ Second, the legislature has enacted a statute against hazing. This indicates to us a social policy against embarrassing or endangering our youth through thoughtless and meaningless activity. Although a legal duty is normally not established through rules and regulations of a university or internal guidelines of a voluntary, unincorporated association, such as the defendant, violation of a statute or ordinance may create a cause of action for negligence. The supreme court has stated: " '[T]he violation of a statute or ordinance designed for the protection of human life or property is *prima facie* evidence of negligence.' " (*First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 9, 373 N.E.2d 1326, 1330; see also *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93; *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881.) In order to sustain such a cause of action, two conditions must be met: "first, the plaintiff must be within the class of persons the ordinance was designed to protect; and second, the plaintiff must have suffered the type of harm the ordinance was designed to prevent." (*Casteel v. Smith* (1982), 109 Ill. App. 3d 1094, 1097, 441 N.E.2d 860, 862; see also *Powell v. Village of Mt. Zion* (1980), 88 Ill. App. 3d 406, 410 N.E.2d 525.) In the instant case, we find the plaintiff was in the class of persons the statute was designed to protect. The allegations in the complaint allege sufficient facts to establish that he suffered a type of harm the statute was designed to prevent.

The allegations in the complaint, if true, are a prime example of what the legislature and the educational institutions have tried to avoid. It would appear that any other ruling would be giving fraternities and sororities a freedom from civil liability when requiring the highly excessive consumption of intoxicants in initiation ceremonies, even to the extent of causing deaths.

Because we hold that a cause of action, as above-described, was stated in the third amended complaint, we are not required to decide whether a cause of action was stated on a theory of voluntary custodian-protectee relationship. On remand, plaintiff will have the opportunity, if desired, to file an additional count based on that theory. We recognize a voluntary custodian-protectee relationship count must allege facts establishing a time when the relationship began. If the relationship began after the fraternity involvement ended, then other party defendants would be required.

For the foregoing reasons, the order of the circuit court of Cham-

paign County dismissing plaintiff's third amended complaint is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

SPITZ, P.J., concurs.

JUSTICE GREEN, specially concurring:
I concur in the decision of the majority to reverse the judgment dismissing the third amended complaint. The heart of my disagreement with them is my belief that the cause of action stated there does not sound in negligence. Rather, I would treat the reference to "negligence" in the complaint as surplusage and hold that the outrageous conduct described sets forth a cause of action based upon wilful and wanton misconduct on the part of the defendant acting through its authorized agents, its active members who had authority to give orders to the pledges who were to be initiated into the fraternity.

As did the trial court, the majority correctly concludes that the crucial issue is as to what duty, if any, was owed by defendant to plaintiff under the circumstances alleged. The majority seems to indicate that the gross conduct of defendant toward plaintiff created a duty owed plaintiff. In making this determination, the majority follows the accepted doctrine of *Lance v. Senior* (1967), 36 Ill. 2d 516, 224 N.E.2d 231. It points out that (1) injuries are likely to result from requiring the consumption of almost lethal quantities of alcohol, (2) refraining from such conduct would be easy, and (3) the fraternity rather than the pledge is the better party to bear the burden of injuries. I agree that because of the existence of those factors, under the allegation of the complaint, defendant was shown to have a duty to refrain from treating plaintiff in the manner alleged. However, the tenor of the opinion is ambiguous as to whether the duty imposed on the defendant is to refrain from being negligent toward plaintiff or to refrain from the gross conduct alleged.

As I have indicated, I deem the conduct attributed to defendant to be wilful and wanton. This is the conduct to which the majority applied the test of *Lance*. Avoidance of that type of conduct is the only duty I would place upon defendant in regard to its imposition of requirements placed upon pledges to perform certain acts as a condition of initiation. Application of the *Lance* test to mere negligence in imposing such requirements does not indicate that imposition of a duty is appropriate. Ordinary negligence in making such requirements is

not particularly likely to cause injury to a pledge, but guarding against injury arising from the acts of the pledge would be difficult. Although, as stated by the majority, great social pressure encourages those seeking initiation to perform required acts, the acts performed are, nevertheless, voluntary. I do not think it is advisable to extend tort liability to require fraternal organizations to bear the burden for such injuries when the directions it gave were merely negligent.

"An Act defining hazing, making the same a misdemeanor, and fixing punishment thereof," referred to by the majority, states in full:

"Sec. 1. Whoever shall engage in the practice of hazing in this state, whereby any one sustains an injury to his person therefrom, shall be guilty of a Class B misdemeanor." Ill. Rev. Stat. 1983, ch. 144, par. 221.

"Sec. 2. The term 'hazing' in this act shall be construed to mean any pastime or amusement, engaged in by students or other people in schools, academies, colleges, universities, or other educational institutions of this state, or by people connected with any of the public institutions of this state, whereby such pastime or amusement is had for the purpose of holding up any student, scholar or individual to ridicule for the pastime of others." Ill. Rev. Stat. 1983, ch. 144, par. 222.

An alleged violation of the foregoing legislation is involved here. However, such a violation is significant only if ordinary negligence is the basis of the action. Then, as stated, the violation is *prima facie* evidence of negligence. No authority has been cited to indicate that a statutory violation is *prima facie* evidence of wilful and wanton misconduct. The statute does not make a violation a tort, for the statute is insufficient to create a public policy. It does not "[affect] the citizens of the State *collectively*" as required to create public policy. (Emphasis added.) *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878.

Thus, because I would treat the references in the complaint to negligence as surplusage, I agree that the complaint states a cause of action. To the extent that the majority opinion holds that a fraternity may be liable for mere negligence in requiring the performance of certain acts by pledges as a condition of initiation, I am in disagreement with that opinion.