TERRI L. GOODKNIGHT, Plaintiff-Appellant, v. EDWIN PIRAINO, Indiv. and d/b/a Arrow Ambulance Service, *et al.*, Defendants (The Village of Royal *et al.*, Defendants-Appellees).

Fourth District   No. 4—89—0412

Opinion filed April 19, 1990.

John K. Hughes and Steven Robert Verr, both of Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., of Chicago, and Thomas W. Fulton, of Urbana, for appellant.

Robert P. Moore and David R. Moore, both of Law Offices of Robert P.

Moore, P.C., of Champaign, and Heyl, Royster, Voelker & Allen, of Peoria (Karen L. Kendall, James C. Kearns, and John D. Flodstrom, of counsel), for appellee Village of Royal.

Anne C. Burr and Howard W. Small, both of Thomas, Mamer & Haughey, and Robert P. Moore and David R. Moore, both of Law Offices of Robert P. Moore, P.C., both of Champaign, for appellee Royal Centennial, Inc.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

The plaintiff, Terri Goodknight, filed a second-amended complaint, counts V through XI alleging common law negligence, wilful and wanton misconduct, and a violation of the Dramshop Act (Act) (Ill. Rev. Stat. 1987, ch. 43, par. 135) against the defendants, Village of Royal, and Royal Centennial, Inc., a nonprofit corporation, and special governmental negligence against the Village of Royal. Counts I through IV involved other defendants not party to this appeal. The trial court granted the defendants' motion to dismiss counts V through XI of plaintiff's second-amended complaint with prejudice and entered a Rule 304(a) finding (107 Ill. 2d R. 304(a)). Plaintiff appeals, and we affirm.

The complaint alleged on the night of February 14, 1987, the plaintiff, 18 years of age, attended a Valentine's Day party promoted by the Village of Royal (Royal), and held in the Royal community building. At this party, liquor was sold. The complaint alleges the plaintiff was "coerced" into drinking alcohol by her male companion, Brent Hockett, and others who attended this party. The complaint further alleges, due to lack of supervision by Royal, the plaintiff became intoxicated, was taken to Hockett's home in her car by Hockett, left Hockett's home, and began to drive to her home in her own car. During this trip, plaintiff crashed her car, sustaining multiple injuries, including an injury to her spine which rendered her disabled.

▆▆ The issues on appeal involve whether a cause of action exists against the defendants for common law negligence, special governmental negligence, or in dramshop, so as to survive a motion to dismiss under section 2—615 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). "Motions to dismiss under section 2—615 of the [Code] *** admit all well-pleaded facts and attack only the legal sufficiency of a complaint. *** '[N]o cause of action should be dismissed on the pleadings unless it clearly appears that no set of facts can be proved to sustain it.'" *First National Bank v.*

*Brumleve & Dabbs* (1989), 183 Ill. App. 3d 987, 992, 539 N.E.2d 877, 880, quoting *Golden Rule Life Insurance Co. v. Mathias* (1980), 86 Ill. App. 3d 323, 332, 408 N.E.2d 310, 317.

The Illinois Supreme Court has determined the Act provides the exclusive remedy against tavern operators and owners for injuries to the person, property, or means of support by an intoxicated person, or the consequences of the intoxication. *Cunningham v. Brown* (1961), 22 Ill. 2d 23, 30-31, 174 N.E.2d 153, 157; *Hopkins v. Powers* (1986), 113 Ill. 2d 206, 497 N.E.2d 757.

Despite the holding of *Cunningham*, there exists a common law negligence cause of action against tavern owners beyond the Act. Plaintiff relies principally on three cases, *Lessner v. Hurtt* (1977), 55 Ill. App. 3d 195, 371 N.E.2d 125, *Hayes v. O'Donnell* (1979), 76 Ill. App. 3d 695, 395 N.E.2d 184, and *Harris v. Gower, Inc.* (1987), 153 Ill. App. 3d 1035, 506 N.E.2d 624. In *Lessner*, while acknowledging the holding in *Cunningham*, the court held regardless of whether a person purchases or consumes liquor in a dramshop, the owner or operator of the dramshop may be negligent and consequently held liable for failure to protect its patrons from physical harm by persons on the premises. (*Lessner*, 55 Ill. App. 3d at 197, 371 N.E.2d at 126.) Therefore, if an owner knows a person is becoming abusive and is likely to attack someone, *Lessner* recognized a duty to take steps to remove the problem, to "act as a reasonable man in avoiding harm to invitees from negligence or even intentional attacks of third persons." (*Lessner*, 55 Ill. App. 3d at 197, 371 N.E.2d at 126.) This result conforms to general principles of duty on the part of a possessor of land who holds it open to the public. *Hayes*, 76 Ill. App. 3d at 697, 395 N.E.2d at 185.

Contrary to plaintiff's argument, *Lessner* does not change the rule of *Cunningham*, but distinguishes between the injuries resulting from a negligent sale or supplying of liquor and those resulting from the failure of a general duty to keep business premises safe. In *Lessner*, as in *Hayes*, the plaintiff was injured as a result of an attack on a patron on the premises by an intoxicated person. (*Lessner*, 55 Ill. App. 3d at 197, 371 N.E.2d at 126; *Hayes*, 76 Ill. App. 3d at 696, 395 N.E.2d at 185.) In *Harris*, the plaintiff passed out at the bar, and was injured after the defendant owners carried him out of the tavern and put him in the car where he froze to death. *Harris*, 153 Ill. App. 3d at 1036-37, 506 N.E.2d at 625.

The *Hayes* court held, since the customers were "boisterous and dangerous," the owner of the establishment should have been placed on notice of the possible attack on the plaintiff and, therefore,

should have done something to prevent this attack. (*Hayes*, 76 Ill. App. 3d at 697, 395 N.E.2d at 185.) This plaintiff alleges the crowd at the dance was an "unruly throng," and argues, as in *Hayes*, this should have put the defendants on notice plaintiff was going to be intimidated into a state of intoxication, and later, as a result of this intoxication, become involved in an automobile accident. This takes the *Hayes* and *Lessner* analysis too far. Plaintiff was injured as a result of a sale of liquor leading to intoxication, not as a result of a violation of a common law duty to maintain a safe premises. Since plaintiff argues the negligent sale of liquor made the premises unsafe, she is essentially arguing the Act should be changed, a matter within the province of the legislature or, by its interpretation of the Act, the supreme court.

In *Harris*, the same analysis applies since, although the injury took place off the premises, it was the actual tavern owners who took the patron out of the building and placed him in his freezing car. No case law applies *Lessner* to a fact pattern in which a patron leaves a dramshop on his own and is injured off the premises, or by an intoxicated person off the premises. Rather, in a case where a person left a tavern on his own and later suffered injuries after becoming unconscious in a bank of snow, the court held the tavern owner was not negligent under the duty imposed under common law for such establishments. (*Gora v. 7-11 Food Stores* (1982), 109 Ill. App. 3d 109, 111-12, 440 N.E.2d 279, 281-82.) In view of the crucial distinction made by the *Lessner* court, we find plaintiff's argument for the applicability of common law negligence cause of action unpersuasive.

■ The plaintiff argues an exception to the Act should be carved out to allow a common law negligence action when alcohol is sold to a minor. In *Puckett v. Mr. Lucky's Ltd.* (1988), 175 Ill. App. 3d 355, 529 N.E.2d 1169, the dissent argued forcefully for "a limited exception to the common law rule of nonliability of dramshops when alcohol is sold to a minor who consequently causes injury to a third person." (*Puckett*, 175 Ill. App. 3d at 365, 529 N.E.2d at 1175 (Knecht, J., dissenting).) Here, however, the minor plaintiff was intoxicated and caused injury to herself, not to a third person, as a result of this intoxication.

Further, in *Puckett*, it was the plaintiff's father, employed by the defendant dramshop, who sold the liquor to the plaintiff minor and his two friends. The plaintiff's mother and guardian brought suit after one of the friends, while driving, was involved in an accident, injuring the plaintiff passenger. (*Puckett*, 175 Ill. App. 3d at 356, 529 N.E.2d at 1169.) In *Puckett*, it was alleged plaintiff's father had been convicted several times of selling liquor to minors prior to being hired by

the defendant, which should have put the defendant on notice he might do so again if hired, thereby creating a possible allegation of negligent hiring. (*Puckett*, 175 Ill. App. 3d at 365-66, 529 N.E.2d at 1175-76 (Knecht, J., dissenting).) Thus, *Puckett* is distinguishable and the dissent's argument is inapplicable.

■ Plaintiff argues she has alleged more than the mere sale of alcohol, *i.e.*, the defendants were negligent in the sale of such liquor, thereby permitting a common law or wilful and wanton negligence action. Yet, the case law does not limit the Act to cases involving a "mere sale of alcohol." As has frequently been stated, "there is no common law liability for the negligent sale of liquor in Illinois." (See *Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 442, 484 N.E.2d 1088, 1092 (and cases cited therein).) The plaintiff has alleged defendant sold liquor in violation of several statutes, thus making this conduct negligent *per se*. The plaintiff further alleges the defendants were negligent in a wilful and wanton fashion, knowingly and intentionally contributing to her intoxication. It is also well settled "there is no common law cause of action based upon wilful and wanton misconduct by a tavern owner, however egregious the underlying facts of the cause of action are." (*Ruth v. Benvenutti* (1983), 114 Ill. App. 3d 404, 406, 449 N.E.2d 209, 211.) Therefore, the negligent sale of liquor to plaintiff, or through others to her, does not give rise to a cause outside the dramshop law, no matter how many acts of negligent sale she alleges.

■ The plaintiff claims *Cunningham*, *Ruth*, and *Gora* do not apply, since intoxication in those cases was voluntary, while her intoxication was involuntary. She argues that since all well-pleaded facts in the complaint must be taken as true, for purposes of a motion to dismiss, the "fact" of her involuntary intoxication, as pleaded in the complaint, must also be taken as true, so as to overcome the motion to dismiss. In considering a motion to dismiss, the trial court must assume the truth of all facts properly pleaded, and all reasonable inferences which can be drawn from such facts; however, "mere conclusions of law, argumentative matter, or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest are irrelevant and must be disregarded by the trial court in ruling on a motion to dismiss." *Loftus v. Mingo* (1987), 158 Ill. App. 3d 733, 738, 511 N.E.2d 203, 205.

■ Only well-pleaded facts must be taken as true. Plaintiff's complaint alleges she was present at the dance sponsored by defendant. The crowd there was unruly and unrestrained. The plaintiff was underage and inexperienced at drinking. She did drink, and became in-

toxicated while at the party. She contends it can be inferred from such allegations her drinking and intoxication were involuntary. This is a conclusion of fact on the part of the plaintiff, and need not be taken as true.

The plaintiff relies on a recent fourth district decision, *Quinn v. Sigma Rho Chapter of Beta Theta Pi Fraternity* (1987), 155 Ill. App. 3d 231, 507 N.E.2d 1193, in support of her argument that circumstances such as those here alleged created such coercive pressure to drink as to make her intoxication involuntary. Yet, in Justice Green's special concurrence in *Quinn*, the *Quinn* plaintiff was still found to be voluntarily intoxicated. (*Quinn*, 155 Ill. App. 3d at 239, 507 N.E.2d at 1198 (Green, J., specially concurring).) "Although, as stated by the majority, great social pressure encourages those seeking initiation to perform required acts, the acts performed are, nonetheless, voluntary." (*Quinn*, 155 Ill. App. 3d at 240, 507 N.E.2d at 1199 (Green, J., specially concurring).) We find plaintiff's attempt to analogize to *Quinn* inappropriate.

The plaintiff argues the dictatorial and coercive behavior of Hockett and those who surrounded her, combined with defendants' facilitating presence and promotion of the drinking, imposed a "requirement" she consume the liquor, just as the fraternity required the plaintiff in *Quinn* to drink. The plaintiff's argument goes too far. In *Quinn*, the drinking was a requirement to get into a specific fraternity. Membership in a fraternity was viewed as a " 'much valued status' " and great pressure was assumed to be on the plaintiff to comply with the fraternity's membership " 'qualifications.' " (*Quinn*, 155 Ill. App. 3d at 237, 507 N.E.2d at 1197.) Plaintiff would have us apply the same exception here, *i.e.*, she, a totally innocent minor, was pressured and required to drink in order to join the "fraternity" of her peers at the dance. *Quinn* did not recognize an exception to the Act for every 18-year-old who "feels pressured" to drink, but a narrow one—a duty on the part of fraternities and sororities to refrain from requiring participation in such acts, holding the cause of action was based on two factors: (1) plaintiff was required to drink to intoxication; and (2) the legislature has enacted a statute against hazing. *Quinn*, 155 Ill. App. 3d at 237-38, 507 N.E.2d at 1198.

Arguing she falls within this exception, plaintiff draws a novel analogy to Illinois agency law, on a theory that defendants are the principals and Hockett and others the agents who required the plaintiff to drink. The agents allegedly committed the tort by negligently serving the plaintiff minor the alcohol, and the defendants, by refilling the pitcher, ratified this tort. Under this theory the negligent act on

the part of defendants on the premises satisfied the common law negligence requirements of *Loftus*, and the exception to the Act carved out by *Quinn*. Plaintiff does not, however, provide any authority for this interpretation of Illinois agency law.

■ In Illinois cases dealing with agents of the owners of taverns, we are aware of no case holding a patron becomes an agent of a dramshop owner simply by bringing a pitcher of alcohol to a table and encouraging another to drink. Nor do Illinois cases hold a dramshop owner can ratify a tort by refilling a pitcher of beer. (*Daley v. Resnick* (1972), 5 Ill. App. 3d 683, 284 N.E.2d 39; *Daley v. Ferguson* (1974), 21 Ill. App. 3d 888, 315 N.E.2d 679.) There can be no apparent or even implied agency here, as there were no words or actions alleged by the plaintiff, including the filling of the pitchers, which would lead a reasonably prudent person, such as the plaintiff, to believe Hockett had the authority to require her to drink what was in the pitcher. (*Bellflower Ag Service, Inc. v. First National Bank & Trust Co.* (1985), 130 Ill. App. 3d 80, 85, 473 N.E.2d 998, 1001-02.) *Quinn* does not apply since, even if Hockett somehow required plaintiff to drink, defendants did not. Again, just because the plaintiff alleges an agency relationship does not mean it is a well-pleaded fact to be taken as true, since such relationship is not a fact but a legal conclusion.

Plaintiff seeks to show the defendant Royal, by virtue of status as a governmental entity, possessed a "special duty" above that of ordinary dramshop owners, which would remove the defendant from dramshop immunity. To support this position, the plaintiff cites *Lakeside Condominium "C" Association v. Frediani Developers, Inc.* (1985), 135 Ill. App. 3d 972, 482 N.E.2d 665. *Lakeside,* however, reiterated the principle such special duty applies to a situation where a city or municipality "steps out of its governmental function and acts in a private capacity or develops a 'relationship' to the plaintiff." (*Lakeside,* 135 Ill. App. 3d at 973, 482 N.E.2d at 666.) The courts have found a special duty created as a result of ordinance violations where, for example, a city had actual knowledge of the dangerous condition of a building, had been requested to remedy the condition by plaintiff, and failed to do so (*Marshall-Putnam Farm Bureau, Inc. v. Shaver* (1973), 12 Ill. App. 3d 402, 299 N.E.2d 10); or a village failed to inspect and allowed a developer to connect an insufficient sewer system—the village's duty disclosed by its adoption and control over the sewer system (*Powell v. Village of Mt. Zion* (1980), 88 Ill. App. 3d 406, 410 N.E.2d 525). These principles would be misapplied here. Sponsoring a dance does not render these defendants insurers for

whatever may happen to those who attend once they leave the premises.

■■ Further, while the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1987, ch. 85, par. 3—102) provides liability for a public entity, and it may be arguable that the defendants are liable under the Tort Immunity Act, the Tort Immunity Act simply codifies the common law duty of a local public entity to maintain its property. (*Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 92, 523 N.E.2d 594, 603.) There is no authority which holds a municipality is under a greater or special duty than the ordinary dramshop owner, simply by virtue of being a governmental entity. This aspect of the plaintiff's argument has no merit.

The plaintiff argues she is a proper plaintiff for a dramshop action. The Illinois Supreme Court has held plaintiffs who cause injury or damages due to their own intoxication cannot bring an action under the Act, as such recovery is limited to innocent third parties or "innocent suitor[s]" injured as a result of sale or gift of intoxicating beverages. (*Hopkins*, 113 Ill. 2d at 212, 497 N.E.2d at 759.) Plaintiff contends she is an innocent suitor since she was involuntarily intoxicated. As discussed previously, this is not a well-pleaded fact, but a conclusion on her part and need not be taken as true for purposes of the motion to dismiss.

■■ The plaintiff contends her injury was proximately caused by an intoxicated third person, Hockett, who allegedly drove her car to his home, and then negligently entrusted her with her own car, so she drove home intoxicated and thereby crashed her car. In *King v. Petefish* (1989), 185 Ill. App. 3d 630, 541 N.E.2d 847, this court extended the doctrine of negligent entrustment to apply to injured entrustees as well as third parties injured by such entrustees. However, the *King* court also held such a finding required the defendant to have " 'supplied the instrumentality, the use which combined with the negligent act of the driver caused the injury.' " (*King*, 185 Ill. App. 3d at 640, 541 N.E.2d at 853, quoting *Bensman v. Reid* (1939), 299 Ill. App. 531, 533, 20 N.E.2d 910, 911.) The *King* court did not extend this doctrine to an injured purported entrustee who supplied the instrumentality which ultimately caused her own injury. Since the plaintiff was driving her own car when injured, there was no duty on Hockett to stop her. Therefore, it cannot be said a negligent act of an intoxicated third person was the proximate cause of plaintiff's injury, and as such, plaintiff does not fit the proper-plaintiff requirements of *Hopkins*.

Plaintiff also cites the Premises Liability Act, which imposes a

statutory duty to take reasonable care regarding the state of the premises or acts done or omitted on them. (Ill. Rev. Stat. 1987, ch. 80, par. 302.) The only case plaintiff cites on application of this statute to a dramshop involved an elderly, vision-impaired person, and a negligent omission on the part of the defendant to make the premises physically safe for such a person. (*Erne v. Peace* (1987), 164 Ill. App. 3d 420, 517 N.E.2d 1203.) As stated previously, this case deals with an injury which was the result of a sale of intoxicating beverage, not an injury due to defendants' negligence on the premises. Therefore, the Act is the exclusive remedy, and no such statutory cause for negligence supplies a basis for this complaint.

Finally, plaintiff cites as supplemental authority a recent fourth district case on the issue of complicity, *Lewis v. Champaign County VFW Post No. 5520* (1989), 187 Ill. App. 3d 73, 543 N.E.2d 233. Complicity is an affirmative defense and was not raised by the defendants at any time. Complicity is therefore of no moment in this case, and we decline to address it.

For the foregoing reasons, we affirm the trial court's dismissal of counts V through XI of the plaintiff's second-amended complaint.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.