SECOND DIVISION

March 30, 2001

No. 1-99-0775

MARY LOUISE WAKULICH, Indiv. and as Special Adm'x of the Estate of Elizabeth Wakulich, Deceased,

Plaintiff-Appellant,

v.

DENNIS MRAZ, MICHAEL MRAZ, and BRIAN MRAZ,

Defendants-Appellees.

))))))))))

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Alfred J. Paul,

Judge Presiding.

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff Mary Louise Wakulich, individually and as special administratrix of the estate of decedent Elizabeth Wakulich, brought an action against defendants Dennis, Michael, and Brian Mraz.  Plaintiff's amended second amended complaint was dismissed by the trial court for failing to state a cause of action.  Plaintiff now appeals.

Plaintiff's amended second amended complaint alleged that on June 15, 1997, and continuing into the morning of June 16, her  daughter, Elizabeth (decedent), was at the home of defendant Dennis Mraz, and his sons, defendants Michael and Brian Mraz.  At the time, decedent was 16 years old, Michael was 21 years old, and Brian was 18 years old.  On the evening of June 15, Michael and Brian provided decedent with a quart of an alcoholic beverage known as Goldschlager.  The complaint alleges that during the evening of June 15 and early morning of June 16, Michael and Brian induced decedent to drink the entire quart of Goldschlager through  goading, the application of great social pressure, and by offering money.  Decedent, to collect the offered money, was required to consume the entire bottle of Goldschlager without losing consciousness or vomiting.  The complaint alleges that Dennis was present in the home and knew or should have known that alcoholic beverages were being served to minors in his home.

In the early morning hours of June 16, decedent, after drinking the Goldschlager, lost consciousness.  According to the complaint, Michael and Brian then placed her in the downstairs family room, where they observed her vomiting profusely and making "gurgling" sounds.  They later checked on her again, at which time they removed her vomit-saturated blouse and placed a pillow under her head to prevent aspiration.  According to the complaint, Michael and Brian did not seek medical attention for decedent and actually prevented others present in the home from calling 911 or seeking other medical intervention.  Later in the morning, Dennis ordered Michael and Brian to remove decedent from the home.  They then took her to a friend's home.  Later, decedent was taken to a hospital where she was pronounced dead.

According to the complaint, Michael was subsequently convicted of contributing to the delinquency of a child, a Class A misdemeanor.  720 ILCS 130/2a (West 1996).

Plaintiff's amended second amended complaint brought claims against the three defendants pursuant to the Wrongful Death Act (740 ILCS 180/0.01 
et
 
seq.
 (West 1996)) and the Survival Act (755 ILCS 5/27-6 (West 1996)).  It was alleged that defendants Michael and Brian were negligent in inducing decedent into drinking to excess, and all three defendants were negligent in failing to act to protect decedent after voluntarily undertaking her care after she became unconscious.

Defendants filed a motion to dismiss plaintiff's amended second amended complaint pursuant to section 2-615 of the Code of Civil Procedure for failure to state a cause of action.  735 ILCS 5/2-615 (West 1998).  Their motion stated that the various counts should be dismissed because under long-standing Illinois law, there is no common law cause of action for alcohol liability beyond that explicitly provided for in the Dramshop Act (235 ILCS 5/6-21) (West 1996)), and because liability under that act does not extend to social hosts or those not engaged in the liquor business.  The motion also contended that the defendants owed no legal duty to seek medical assistance for the decedent and that the counts brought pursuant to the Survival Act should be dismissed because an administratrix appointed pursuant to the Wrongful Death Act has no standing to commence Survival Act claims.

The trial court dismissed plaintiff's amended second amended complaint.  Plaintiff now appeals.

Plaintiff contends that the trial court erred in granting defendants' motion to dismiss her amended second amended complaint for failure to state a cause of action.  In ruling on a section 2-615 motion to dismiss, it must be determined whether the allegations of the complaint, when considered in a light most favorable to the plaintiff, sufficiently state a cause of action upon which relief can be granted.  
Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.
, 186 Ill. 2d 419, 424, 712 N.E.2d 330 (1999).  Unless it clearly appears that the plaintiff can prove no set of facts that will entitle him or her to relief, a cause of action will not be dismissed on the pleadings.  
Bloomfield Club Recreation Ass'n
, 186 Ill. 2d at 424; 
Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.
, 114 Ill. 2d 278, 286, 499 N.E.2d 1319 (1986).  For purposes of judging the sufficiency of a complaint, all well-pleaded facts must be taken as true.  
Charles Hester Enterprises
, 114 Ill. 2d at 286.  A trial court's dismissal of an action pursuant to section 2-615 of the Code of Civil Procedure for failure to state a cause of action is reviewed 
de
 
novo
.  
Bloomfield Club Recreation Ass'n
, 186 Ill. 2d at 424.

In 
Charles v. Seigfried
, 165 Ill. 2d 482, 491, 651 N.E.2d 154 (1995), our supreme court held that the entire field of alcohol-related liability had been preempted by the Illinois General Assembly through its passage and continual amendment of the Dramshop Act.  The court further held that the legislative preemption extended to social hosts who provide alcoholic beverages to another person, whether that person is an adult, underage, or a minor.  
Charles
, 165 Ill. 2d at 491.  The court traced the rule that no social host liability exists in Illinois under the common law or Dramshop Act back to the 1889 case of 
Cruse v. Aden
, 127 Ill. 231, 20 N.E. 73 (1889).  See 
Charles
, 165 Ill. 2d at 487-88.

Justice McMorrow, joined by Justice Harrison, wrote a lengthy dissent to the majority opinion in 
Charles
, arguing for the recognition of social host liability for the provision of alcohol to minors who become intoxicated and are subsequently injured in alcohol-related vehicle accidents.  
Charles
, 165 Ill. 2d at 504-23 (McMorrow, J., dissenting).  The dissent contains the following passage relevant to this appeal:

"Our appellate court has expressed growing dissatisfaction with jurisprudence of this State regarding civil liability for alcohol-related injuries.  Appellate decisions have already created exceptions to the general rule of non-liability for the provision of alcohol in contexts other than dramshop actions.  (See, 
e.g.
, 
Haben v. Anderson
 (1992), 232 Ill. App. 3d 260, [597 N.E.2d 655]; 
Quinn v. Sigma Rho Chapter of Beta Theta Pi Fraternity
 (1987), 155 Ill. App. 3d 231, [507 N.E.2d 1193] (imposing common law negligence liability when minor 'required' to consume alcohol during college 'hazing' party).)"  
Charles
, 165 Ill. 2d at 510 (McMorrow, J., dissenting).

In 
Quinn
, 155 Ill. App. 3d 231, 507 N.E.2d 1193, one of the cases cited in the above passage, the plaintiff, a pledge of the defendant fraternity, was required to participate in an initiation ceremony in order to become a member of the fraternity.  The plaintiff was directed to drink a 40-ounce pitcher of beer without letting it leave his lips or until he vomited.  He was then directed to drink from an eight-ounce bottle of whiskey and was taken to a tavern where members of the fraternity purchased more liquor for the pledges.  
Quinn
, 155 Ill. App. 3d at 233-34.  Plaintiff eventually became extremely intoxicated, unconscious, and suffered neurological damage to his arms and hands as a result of his alcohol intake.  The plaintiff brought a cause of action grounded in simple common law negligence.  Although the court noted that the plaintiff, in asking the court to acknowledge a cause of action in negligence, was asking it to "draw perilously close to the extensive case law prohibiting common law causes of action for negligently selling alcohol," the court held that a cause of action existed.  
Quinn
, 155 Ill. App. 3d at 235-38.  The court based its finding that a cause of action existed on two factors:

"First, the fact that plaintiff was required to drink to intoxication.  This sufficiently distinguishes the instant case from the social host-guest situation.  The social pressure that exists once a college or university student has pledged into a fraternal organization is so great that compliance with initiation requirements places him or her in a position of acting in a coerced manner.

Second, the legislature has enacted a statute against hazing.  This indicates to us a social policy against embarrassing or endangering our youth through thoughtless and meaningless activity."  
Quinn
, 155 Ill. App. 3d at 237-38.

In 
Haben v. Anderson
, 232 Ill. App. 3d 260, 597 N.E.2d 655, the other case cited in the above passage from Justice McMorrow's dissent in 
Charles
, the plaintiff was the special administrator of the estate of a deceased student who had been a "rookie" on a lacrosse club sanctioned by a university.  The 12 defendants, all active members of the club, participated in the "initiation" of new recruits, including the decedent, to the club.  The plaintiff alleged that the initiation hazing and drinking activities conducted by the defendant club members had occurred for a number of years and had become a tradition and 
de
 
facto
 requirement for membership in the club.  In the course of the initiation activities, the decedent became highly intoxicated, lost consciousness, and was carried to one of the defendant's dormitory rooms, where he was discovered dead the next morning.  The 
Haben
 court found that the plaintiff's complaint adequately stated a cause of action pursuant to 
Quinn
.  
Haben
, 232 Ill. App. 3d at 267.  In so holding, the court noted that the plaintiff had alleged "that Club membership was a much valued status, that drinking was a 
de
 
facto
 requirement for membership in the club, and that the decedent was 'pressured' to drink."  
Haben
, 232 Ill. App. 3d at 265.  The court also relied on the fact that a violation of a statute prohibiting certain hazing activities was involved.  
Haben
, 232 Ill. App. 3d at 267.

A number of counts in plaintiff's action are premised on the continuing viability, after 
Charles
, of the decisions in 
Quinn
 and 
Haben
.  Thus, the first issue before this court is whether 
Quinn
 and 
Haben
 remain good law in the wake of the supreme court's opinion in 
Charles
.

Plaintiff contends that 
Quinn
 and 
Haben
 created an exception to the general rule of nonliability for the provision of alcohol in contexts other than dramshop actions that has survived the majority's decision in 
Charles
.  According to plaintiff, where the majority in 
Charles
 "addressed and attempted to refute each of the dissent's arguments," but failed to specifically mention or overturn the 
Quinn
 and 
Haben
 decisions, those holdings remain good law by implication.

Defendants, and the trial court, believe that no such exception survived
.  Defendants argue that the supreme court, in 
Charles
, was unequivocal when it stated that "[a]ll binding precedent on the subject teaches us that the General Assembly has preempted the entire field of alcohol-related liability through its passage and continual amendment of the Dramshop Act."  
Charles
, 165 Ill. 2d at 491.  The court, in conclusion, held that it was declining to "create any form of social host liability."  
Charles
, 165 Ill. 2d at 504.  Thus, defendants conclude, the narrow exception to social host liability created by 
Quinn
 was eliminated by the 
Charles
 decision despite the majority's failure to overrule it by name.

We agree with defendants.  The supreme court, in 
Charles
, cast a wide net in stating that the General Assembly has preempted the 
entire
 
field
 of alcohol-related liability.  
Charles
, 165 Ill. 2d at 488.  Based on the majority's repeated statements regarding preemption of the entire field and repeated findings that any form of social host liability that is to be created must come from the legislature, we cannot now say that the liability exception created by 
Quinn
 survived 
Charles
.

Even assuming, 
arguendo
, that a cause of action pursuant to 
Quinn
 and 
Hagen
 is still viable after 
Charles
, we find that plaintiff has failed to sufficiently plead such a cause of action.  As stated earlier, the 
Quinn
 court found that a cause of action existed where (1) the plaintiff was required to drink to intoxication; and (2) the legislature had enacted a statute against hazing, thus indicating "a social policy against embarrassing or endangering our youth through thoughtless and meaningless activity."  
Quinn
, 155 Ill. App. 3d at 237-38.  In 
Haben
, the court found that "it is sufficient to state a cause of action under the 
Quinn
 case if it is alleged that there was a 
de
 
facto
 requirement to consume alcohol for membership in an organization and that there was a violation of the Hazing Act."  
Haben
, 232 Ill. App. 3d at 267.

Plaintiff contends that the first prong of the 
Quinn
/
Haben
 exception has been sufficiently pled here where it was alleged that defendants Michael and Brian Mraz used their age and considerable experience to coerce decedent into consuming an excessive amount of alcohol, decedent was several years younger than Michael and Brian and thus felt compelled to fit in with the older group, Michael and Brian challenged decedent by offering her money if she drank the entire bottle of Goldschlager, and defendants' goading occurred in front of several of decedent's friends.  Plaintiff believes that it was the involuntary nature of decedent's actions that distinguish this case from other social host cases and which brings it within the 
Quinn
/
Haben
 exception.

Defendants maintain that decedent was not required to drink to intoxication, but instead voluntarily chose to do so in a social setting.  Defendants argue that the facts in the instant case are more analogous to those in 
Goodknight v. Piraino
, 197 Ill. App. 3d 319, 554 N.E.2d 1 (1990), than they are to 
Quinn
 and 
Haben
.  In 
Goodknight
, the 18-year-old female plaintiff attended a party promoted by a village and held at the village community building.  The plaintiff alleged that at the party, at which liquor was sold, she was "coerced" into drinking alcohol by her male companion and others who attended the party.  Plaintiff became intoxicated and was later injured when she crashed her car.

The appellate court held that, for purposes of a motion to dismiss, the plaintiff's contention that it could be inferred from her allegations that her drinking and intoxication were involuntary was a conclusion of fact that need not be taken as true.  
Goodknight
, 197 Ill. App. 3d at 325.  The court then addressed the plaintiff's contention that "the dictatorial and coercive behavior of [her male companion] and those who surrounded her, combined with [the defendant village and defendant nonprofit corporations'] facilitating presence and promotion of the drinking, imposed a 'requirement' she consume the liquor, just as the fraternity required the plaintiff in 
Quinn
 to drink."  
Goodknight
, 197 Ill. App. 3d at 325.  The court found that plaintiff's argument went too far.  Specifically, the court noted that in 
Quinn
, the drinking was a requirement to get into a specific fraternity, membership in a fraternity was seen as a "much valued status," and that great pressure was assumed to have been upon the plaintiff to comply with the fraternity's membership qualifications.  
Goodknight
, 197 Ill. App. 3d at 325.  The court held that "
Quinn
 did not recognize an exception to the [Dramshop] Act for every 18-year-old who 'feels pressured' to drink, but a narrow one--a duty on the part of fraternities and sororities to refrain from requiring participation in such acts ***."  
Goodknight
, 197 Ill. App. 3d at 325.

We conclude that the allegations of peer pressure and offers of money in the instant case fail, for similar reasons, to bring this case within the ambit of 
Quinn
.  Despite the tragedy presented by the facts of this case, those same facts establish only that decedent was someone who succumbed to peer pressure.  Where decedent was not attempting to join an actual organization, 
it would be a dramatic expansion of the 
Quinn
/
Haben
 exception, assuming such an exception survived 
Charles
, to find that a cause of action exists here.

We also disagree with plaintiff's contention that the conduct of the defendants violated the second prong of the 
Quinn
/
Hagen
 exception.  Plaintiff, citing 
Quinn
, 155 Ill. App. 3d at 238,  characterizes the second prong as the violation of a statute where the underlying social policy of the statute is to prevent embarrassing or endangering our youth through thoughtless and meaningless activity.  Here, the statute at issue concerns contributing to the delinquency of a child.  720 ILCS 130/2a (West 1996).  Defendant Michael Mraz, in an unrelated proceeding, was purportedly convicted of a violation of that criminal statute for his role in the facts of this case.  The statute prohibits any person from knowingly or wilfully causing, aiding, or encouraging, any girl or boy to be or become a delinquent child, or from knowingly or wilfully doing any acts which directly tend to render any such child delinquent.  720 ILCS 130/2a (West 1996).  Plaintiff contends that the social policy underlying the statute is the same as that underlying the anti-hazing statute at issue in 
Quinn
 
and a legal duty pursuant to the 
Quinn
/
Haben
 exception is thereby created.

An argument similar to plaintiff's argument here was made in 
Charles
.  In 
Charles
, 165 Ill. 2d at 498, the plaintiffs maintained that the court should create a civil cause of action where a social host had violated a section of the Liquor Control Act of 1934 (235 ILCS 5/1-1 
et
 
seq
. (West 1996)), making it a petty offense for an adult to knowingly permit a gathering of persons under the age of 18 at a residence where the persons under the age of 18 are known to be consuming alcohol or leave the residence in an intoxicated condition.  
The court proceeded to review various legislative proposals imposing forms of social host liability that the General Assembly had considered and chosen not to adopt in the 10 years previous.  
Charles
, 165 Ill. 2d at 499-501.  Based on its review, the court concluded that it could not, in the face of the legislative refusals to do so, determine that grafting social host liability onto any section of the Liquor Control Act would conform with legislative intent.  
Charles
, 165 Ill. 2d at 501.  Such an interpretation, the court found, "would be tantamount to judicial gymnastics."  
Charles
, 165 Ill. 2d at 501.  Similarly, in light of 
Charles
, we cannot conclude that the legislature, by making contributing to the delinquency of a child a criminal violation, intended to create civil liability for social hosts who violate the statute.

Moreover, in the instant case, to allow a civil action to flow from the violation of a criminal statute prohibiting an adult from encouraging a minor to consume alcohol would go a long way toward eviscerating the general rule of no common law social host liability.  As the court held in 
Charles
, 165 Ill. 2d at 491, the legislative preemption in the field of alcohol-related liability extends to social hosts who provide alcoholic beverages to another person, whether that person is an adult, underage, or a minor.  
That finding would have no meaning if a civil cause of action were found to exist whenever an adult had arguably caused, aided, or encouraged a minor to consume alcohol.

Plaintiff next contends that public policy dictates this court recognize a common law negligence action against an adult social host who knowingly serves alcohol to a minor.  In so arguing, plaintiff first contends that the Dramshop Act (235 ILCS 5/6-21 (West 1996)) does not explicitly preempt a cause of action based upon a social host providing alcohol to a minor and urges the court to follow what she terms a national trend in tort law favoring social host liability for providing alcohol to minors.  In so arguing, plaintiff echoes Justice McMorrow's dissent in 
Charles
.
  See 
Charles
, 165 Ill. 2d at 504-23 (McMorrow, J., dissenting).  However, in light of the strong language of the majority opinion in 
Charles
, 165 Ill. 2d at 493-97, in which the court stated that the adoption of any form of social host liability was a subject better suited to the legislature, it would be inappropriate for this court to accept plaintiff's invitation to follow the national trend and impose liability in tort on social hosts who serve alcohol to minors.  In so holding, we note that the 
Charles
 majority specifically disagreed with the dissent's claim that there was a "clear national trend" favoring social host liability for adults who provide alcohol to minors.  
Charles
, 165 Ill. 2d at 495-96 (discussing Justice McMorrow's dissent).

Plaintiff next maintains that she has pleaded sufficient facts to establish a cause of action based upon defendants' failure to exercise due care in voluntarily undertaking to care for plaintiff's decedent after she became unconscious.  We agree.

"One who voluntarily undertakes to render services to another is liable for bodily harm caused by his failure to perform such services with due care or with such competence and skill as he possesses."  
Siklas v. Ecker Center for Mental Health, Inc.
, 248 Ill. App. 3d 124, 131, 617 N.E.2d 507 (1993).  In the complaint in the instant case, plaintiff alleged that decedent lost consciousness shortly after consuming the alcohol she was coerced into drinking, that defendants Michael and Brian then placed her in a downstairs family room where they observed her vomiting profusely and making "gurgling" sounds, that Michael and Brian checked on decedent in the early morning hours at which time they removed her vomit-saturated blouse and placed a pillow under her head to prevent aspiration, and that defendant Dennis Mraz ordered decedent removed from the home, at which time Michael and Brian physically moved decedent from the home in her unconscious state.  According to the complaint, decedent sustained injuries as a direct and proximate result of those negligent acts.

Defendants maintain that absent a special relationship there is no duty on the part of a social host to supervise an intoxicated guest.  The lack of duty, defendants argue, includes seeking medical attention.  Defendants rely on the cases of 
Zamiar v. Linderman
, 132 Ill. App. 3d 886, 890, 478 N.E.2d 534 (1985) (rejecting the plaintiff's invitation to enunciate a common law duty for social hosts providing alcohol to "supervise" intoxicated guests), and 
Estate of Ritchie v. Farrell
, 213 Ill. App. 3d 846, 849, 572 N.E.2d 367 (1991) (holding that, absent a special relationship between the parties, there was no duty to come to the aid and assistance of a person who had voluntarily chosen to drink an inordinate amount).  We agree with defendants that, as social hosts, they had no duty to obtain medical assistance for decedent.  Both 
Ritchie
 and 
Zamiar
 are distinguishable, however, because there was no voluntary undertaking on the part of the defendants in those cases.  Here, plaintiff has alleged that Michael and Brian voluntarily undertook affirmative steps to care for decedent and did so in a negligent manner.  See 
Castro v. Brown's Chicken & Pasta, Inc.
, 314 Ill. App. 3d 542, 547, 732 N.E.2d 37 (2000) (noting that liability can be imposed for the negligent performance of a voluntary undertaking even where no legal duty based upon a "special relationship" between the parties exists).

In 
Haben
, 232 Ill. App. 3d at 267-68, in addition to the social host liability issue discussed earlier, a separate count in the complaint alleged that one of the defendant lacrosse club members had voluntarily assumed a duty to care for the decedent by allowing the decedent to be placed on the floor of defendant's dormitory room unconscious, and by checking on him during the night at which time he heard him making gurgling noises.  The appellate court found that the trial court had erroneously dismissed the voluntary undertaking count where, based on the allegations in the complaint, a trier of fact could conclude, 
inter
 
alia
, that the defendant had "assumed a duty to care for the decedent by checking on him during the night" and that defendant had not acted "reasonably to prevent harm to the decedent after allowing him to be placed on the floor of his room unconscious and after hearing gurgling sounds when checking on him."  
Haben
, 232 Ill. App. 3d at 268.  As noted by the trial court in the instant case, plaintiff here has almost mirrored the voluntary undertaking allegations made in 
Haben
.  232 Ill. App. 3d at 267-68.

Although defendants argue that no part of 
Haben
 remains good law following 
Charles
, we find that the voluntary undertaking analysis in 
Haben
 was separate and distinct from the court's analysis of social host liability.  Contrary to defendants' argument, the voluntary undertaking counts here and in 
Haben
 were not premised on a duty that arose through the defendants' status as social hosts, but rather on a duty that arose through the unrelated voluntary undertakings of defendants who incidently happened to also be social hosts.  As noted earlier, defendants had no duty as social hosts to come to the aid of decedent or obtain medical assistance for her.  The viability of the voluntary undertaking counts, however, is not dependent on a duty created through the defendants' provision of alcohol to decedent but, rather, on the defendants having voluntarily undertaken to care for decedent after she became unconscious and having allegedly failed to exercise due care in the performance of that undertaking.  
We therefore find that the status of the defendants as social hosts cannot insulate them from liability for allegedly failing to exercise due care in the performance of their voluntary undertaking.

Defendants maintain that none of their alleged acts indicate a voluntary assumption of any responsibility for decedent's health or well-being.  We disagree.  Specifically, it was alleged that after decedent became unconscious, Michael and Brian carried her downstairs, placed her on a couch, observed her vomiting profusely and making gurgling noises, checked on her later, changed her vomit-saturated shirt, and placed a pillow underneath her head to prevent aspiration.  The actions of Michael and Brian more clearly demonstrated an undertaking concerning decedent's well-being than the acts found to be sufficient to state the same cause of action in 
Haben
.  We find therefore, that plaintiff has sufficiently pled that defendants Michael and Brian voluntarily assumed a duty to care for decedent.

Defendants maintain that they were not negligent in discharging any responsibility they did undertake, that a finding that there was a duty in this case creates uncertainty as to how that duty may be adequately discharged, and that decedent's death was not the proximate result of any voluntary undertaking on their part.  We are confident that a jury or other trier of fact is capable of determining whether defendants, having voluntarily undertaken to care for the decedent after she became unconscious and began to vomit and gurgle, performed that undertaking with due care.  We also find that the complaint alleges various acts, including allegations that defendants Michael and Brian prevented other individuals from calling for emergency medical intervention, from which a jury could find the defendants acted negligently in discharging their voluntarily assumed duty, proximately leading to decedent's death.

We find that the trial court erred in concluding that the Wrongful Death Act and Survival Act claims against Michael and Brian in counts III, IV, VII, and VIII failed to state a cause of action.
(footnote: 1)
 Finally, plaintiff asks that if this case is reversed and remanded, she be allowed to request leave to amend her second amended complaint in order to have an independent administrator bring the counts pled pursuant to the Survival Act.  Our review of the record shows that the trial court, just prior to the dismissal of the amended second amended complaint that resulted in this appeal, ruled that "technically and procedurally and to dot all the i's and cross all the t's," it would be necessary for an independent administrator of the estate appointed in probate court to bring the Survival Act actions rather than a special administratrix appointed under the Wrongful Death Act.  We see no bar to plaintiff seeking leave, on remand, to amend her complaint to correct this technical defect in compliance with the trial court's ruling.

Accordingly, we affirm the trial court's dismissal of counts I, II, V, VI, IX, and X of plaintiff's amended second amended complaint.  We reverse the trial court's dismissal of counts III, IV, VII, and VIII against defendants Michael and Brian and remand this case for further proceedings.

Affirmed in part and reversed in part; cause remanded.

GORDON and COUSINS, JJ., concur.

FOOTNOTES
1: We note that counts IX and X, which are directed against defendant Dennis, allege no voluntary undertaking on his part.  Those counts were therefore properly dismissed.