(No. 92128.—

MARY LOUISE WAKULICH, Indiv. and as Special Adm'r of the Estate of Elizabeth Wakulich, Deceased, Appellant, v. DENNIS MRAZ *et al.*, Appellees.

*Opinion filed February 6, 2003.*

RARICK, J., took no part.
McMORROW, C.J., specially concurring.

Stephen M. Passen and John J. Driscoll, of Chicago, for appellant.

Michael C. Borders and Daniel M. Noland, of Rooks, Pitts & Poust, of Chicago, for appellees.

Vincent B. Browne and Kenneth J. Sophie, Jr., of Harrington, Thompson, Acker & Harrington, Ltd., of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE FITZGERALD delivered the opinion of the court:

In this appeal we review the dismissal of a complaint pursuant to section 2—615 of the Code of Civil Procedure (Code). 735 ILCS 5/2—615 (West 2000). Generally, plaintiff alleged that defendants were negligent in providing an alcoholic beverage to plaintiff's minor daughter, and negligent in their performance of a voluntary undertaking to care for the minor after she became unconscious, such negligence proximately causing her death. In deciding whether the first claim was properly dismissed, we must consider whether this court should

revisit and overturn its decision in *Charles v. Seigfried*, 165 Ill. 2d 482 (1995), and recognize a cause of action against adult social hosts for serving alcoholic beverages to minors who are subsequently injured. For the reasons discussed below, we adhere to our decision in *Charles* and decline to recognize any form of social host liability. Because we find, however, that plaintiff has adequately pled a negligence action based on a voluntary undertaking theory, this matter must be remanded to the trial court for further proceedings on plaintiff's complaint.

## BACKGROUND

Following the death of her 16-year-old daughter Elizabeth Wakulich, plaintiff Mary Louise Wakulich, individually and as special administrator of Elizabeth's estate, brought an action in the circuit court of Cook County, alleging claims under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 1996)) and the Survival Act (755 ILCS 5/27—6 (West 1996)). According to the 10-count "Amended Second Amended Complaint,"[1] during the evening of June 15, 1997, and continuing into the early morning hours of June 16, 1997, Elizabeth was at the home of defendants, Michael Mraz, his brother Brian Mraz, and their father Dennis Mraz. At that time, Michael was 21 years old, and Brian was 18 years old. Plaintiff alleged that Michael and Brian induced Elizabeth, "by offering monies, by goading and by applying great social pressure," to drink a quart bottle of Goldschlager, a "highly alcoholic and dangerous" beverage, and that Michael and Brian knew, or should have known, that Elizabeth, a minor, could not appreciate the dangers associated with consumption of excessive amounts of alcoholic beverages.

According to the complaint, after consuming the

---

[1]For ease of discussion, we will refer to the "Amended Second Amended Complaint" simply as the "complaint."

entire bottle of Goldschlager, Elizabeth lost consciousness. Michael and Brian placed her in the family room of their home, where they observed her "vomiting profusely and making gurgling sounds." They later removed her vomit-saturated blouse and placed a pillow under her head to prevent aspiration. Brian and Michael allegedly refused to drive Elizabeth home, did not contact her parents, did not seek medical attention, and "actually prevented other individuals at the home from calling 911 or seeking other medical intervention." Plaintiff further alleged in the complaint that, during the morning of June 16, 1997, Dennis "ordered" Michael and Brian to remove Elizabeth from their home, which they did.[2] Elizabeth died later that day. The complaint indicates that Michael was subsequently convicted of contributing to the delinquency of a minor (720 ILCS 130/2a (West 1996)).

Plaintiff advanced two theories of recovery: (1) that Michael and Brian were negligent in providing alcohol to Elizabeth and inducing her to drink to excess (counts I, II, V and VI); and (2) that Michael, Brian and Dennis were negligent in failing to act reasonably to protect Elizabeth after voluntarily undertaking to care for her after she lost consciousness (counts III, IV, VII, VIII, IX and X).

Defendants moved to dismiss the complaint pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 1996)) for failure to state a cause of action. Defendants principally argued that under this court's decision in *Charles*, there is no common law social host liability in Illinois. The trial court dismissed the complaint with prejudice. Plaintiff appealed.

The appellate court reversed the dismissal of those counts of the complaint directed against Michael and Brian based on their alleged negligent performance of a

---

[2]Somewhat confusingly, the complaint also alleges that Michael and Brian each ordered Elizabeth removed from the home.

voluntary undertaking, affirmed the dismissal of the balance of the complaint, and remanded the matter to the circuit court for further proceedings. 322 Ill. App. 3d 768. We allowed plaintiff's petition for leave to appeal (see 177 Ill. 2d R. 315), and allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of plaintiff (see 155 Ill. 2d R. 345). We now affirm the judgment of the appellate court.

## ANALYSIS

### I

A motion to dismiss under section 2—615 of the Code (735 ILCS 5/2—615 (West 2000)) challenges only the legal sufficiency of the complaint. *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 85 (2002). We review an order granting a section 2—615 motion to dismiss *de novo*. *Jarvis*, 201 Ill. 2d at 86; *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 491 (1999). The critical inquiry is whether the allegations of the complaint, when construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. In making this determination, all well-pleaded facts in the complaint must be taken as true. *Jarvis*, 201 Ill. 2d at 86; *Weatherman*, 186 Ill. 2d at 491.

Preliminarily, we note that plaintiff has not challenged the appellate court's affirmance of the dismissal of counts IX and X directed against Dennis Mraz. Accordingly, we consider only the viability of plaintiff's claims against Michael and Brian.

### II

We consider first those counts which alleged that Michael and Brian were negligent in providing an alcoholic beverage to Elizabeth and inducing her to consume a dangerous amount. Defendants contend that these counts were properly dismissed based on our decision in *Charles v. Seigfried*, 165 Ill. 2d 482 (1995).

In *Charles*, decided just two years prior to the events giving rise to the present litigation, we addressed whether this court should recognize a cause of action against social hosts for serving alcoholic beverages to minors who are subsequently injured. The factual backdrop against which we decided this issue involved two different social gatherings at which minors were served alcoholic beverages, became intoxicated, and were involved in motor vehicle accidents. In the first case, Lynn Sue Charles, who was 16 years of age at the time, became intoxicated at the defendant's home. She left the party by driving her own automobile and was later involved in a fatal collision. In the second case, 15-year-old Paula Bzdek became intoxicated at the defendants' home, and left the party with an 18-year-old friend, who was also intoxicated. The 18-year-old friend lost control of his vehicle, crashing into oncoming traffic. Bzdek, who was a passenger in the vehicle, suffered permanent injuries. In each case, a complaint was filed premised on theories of social host liability. In each case, the trial court dismissed the complaint, the plaintiff appealed, and the appellate court reversed the dismissal. *Charles v. Seigfried*, 251 Ill. App. 3d 1059 (1993); *Bzdek v. Townsley*, 262 Ill. App. 3d 238 (1994).

In the Charles litigation, the appellate court recognized a cause of action against a social host who knowingly serves alcoholic beverages to a minor at the social host's residence, permits the minor to become intoxicated, and allows the minor to leave in a motor vehicle. *Charles*, 251 Ill. App. 3d at 1064-65, quoting *Cravens v. Inman*, 223 Ill. App. 3d 1059, 1076 (1991). In the Bzdek litigation, the appellate court recognized a similar cause of action against social hosts who knowingly serve intoxicants to persons under the legal drinking age of 21. *Bzdek*, 262 Ill. App. 3d at 245-46. In a consolidated appeal, we reversed both decisions. Relying on over a

century of precedent, we held that "Illinois has no common law cause of action for injuries arising out of the sale or gift of alcoholic beverages; that the legislature has preempted the field of alcohol-related liability; and that any change in the law governing alcohol-related liability should be made by the General Assembly, or not at all." *Charles*, 165 Ill. 2d at 486. We thus declined to adopt any form of social host liability.

In the instant case, plaintiff requests that we reconsider and overrule *Charles* and recognize a common law negligence action against adult social hosts, *i.e.*, persons 18 years of age and older who knowingly serve alcohol to a minor. Based on the doctrine of *stare decisis*, we deny plaintiff's request and adhere to our decision in *Charles*.

The doctrine of *stare decisis* is a basic tenet of our legal system. *Hoffman v. Lehnhausen*, 48 Ill. 2d 323, 329 (1971). Simply stated, *stare decisis* reflects the policy of the courts " 'to stand by precedents and not to disturb settled points.' " *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 47 (1998), quoting *Neff v. George*, 364 Ill. 306, 308-09 (1936). In other words, "a question once deliberately examined and decided should be considered as settled and closed to further argument ***." *Prall v. Burckhartt*, 299 Ill. 19, 41 (1921). The doctrine "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827, 115 L. Ed. 2d 720, 737, 111 S. Ct. 2597, 2609 (1991); see also *Prall*, 299 Ill. at 41 (*stare decisis* is "indispensable to the due administration of justice"). Although the doctrine of *stare decisis* does not constitute an "inexorable command" (*Chicago Bar Ass'n v. Illinois State Board of Elections*, 161 Ill. 2d 502, 510 (1994)), we will depart from the doctrine only upon a showing of "good cause" (*Heimgaertner v. Benjamin Electric Manufactur-*

*ing Co.*, 6 Ill. 2d 152, 166-67 (1955); see also *People v. Robinson*, 187 Ill. 2d 461, 463-64 (1999) ("compelling reasons *may* require a departure from prior precedent" (emphasis in original))). Plaintiff in the instant case has failed to make a showing of good cause. Indeed, the grounds advanced by plaintiff for the adoption of social host liability are identical to the grounds we considered and rejected in *Charles*.

Plaintiff argues, for example, that this court should follow the "national trend" recognizing a cause of action against adult social hosts who provide alcohol to minors. We expressly rejected this argument in *Charles*, concluding that our decision should be "grounded upon the law of Illinois rather than upon contradictory trends elsewhere." *Charles*, 165 Ill. 2d at 496. As explained in *Charles*, in Illinois, the common law recognized no cause of action for injuries arising out of the sale or gift of alcoholic beverages. The legislature's adoption of the Dramshop Act (now codified as section 6—21 of the Liquor Control Act of 1934 (235 ILCS 5/6—21 (West 2000)) created a limited and exclusive statutory cause of action by imposing a form of no-fault liability upon dramshops for selling or giving intoxicating liquors to persons who subsequently injure third parties. *Charles*, 165 Ill. 2d at 486-89. Through its passage and continual amendment of the Dramshop Act, the General Assembly has preempted the entire field of alcohol-related liability. *Charles*, 165 Ill. 2d at 491.

Plaintiff in the instant case also argues that because Illinois law clearly treats minors as a "protected class" when it comes to the consumption of alcohol, tort liability should apply to adult social hosts who serve alcoholic beverages to minors. We considered and dismissed this very argument in *Charles*. *Charles*, 165 Ill. 2d at 491. "Legislative preemption in the field of alcohol-related liability extends to social hosts who provide alcoholic

beverages to another person, *whether that person be an adult, an underage person, or a minor.*" (Emphasis added.) *Charles*, 165 Ill. 2d at 491.

Plaintiff here further contends that "public policy" dictates that this court should recognize social host liability for the provision of alcohol to minors. In *Charles*, however, we observed that the "primary expression of Illinois public and social policy should emanate from the legislature." *Charles*, 165 Ill. 2d at 493. We explained:

> "The General Assembly, by its very nature, has a superior ability to gather and synthesize data pertinent to the issue. It is free to solicit information and advice from the many public and private organizations that may be impacted. Moreover, it is the only entity with the power to weigh and properly balance the many competing societal, economic, and policy considerations involved. These considerations include such issues as whether sufficient remedies are already available to injured parties through their own insurance ***, the effect on homeowners' and renters' insurance policies and rates, whether the social hosts' liability should be limited, and what standards of conduct should govern social hosts.
>
> This court, on the other hand, is ill-equipped to fashion a law on this subject that would best serve the people of Illinois. We can consider only one case at a time and are constrained by the facts before us. Moreover, if we were to undertake to change the rules concerning alcohol-related liability, the law would be in a confused, disorderly state for many years while the trial courts attempted to predict how this court would eventually resolve these questions." *Charles*, 165 Ill. 2d at 493-94.

We held, therefore, that judicial restraint in this area was appropriate and that any decision to expand civil liability of social hosts should be made by the legislature. *Charles*, 165 Ill. 2d at 493-94.

Additionally, plaintiff argues that where, as here, the legislature has failed to act, it is the duty of this court to intervene and develop the common law. Once again, this is an argument that we expressly considered and rejected

in *Charles*. We observed that, since 1986, the General Assembly had considered imposing some form of social host liability upon adults who furnish alcohol to underage persons at least six times, but that such attempts were rejected. *Charles*, 165 Ill. 2d at 499. We appropriately inferred that the General Assembly had deliberately chosen *not* to impose such social host liability. *Charles*, 165 Ill. 2d at 501.

Since our decision in *Charles*, the General Assembly has again considered imposing liability upon persons who supply alcoholic beverages to minors. See 91st Ill. Gen. Assem., House Bill 4723, 2000 Sess. (creating the Underage Alcohol Use Liability Act); 91st Ill. Gen. Assem., Senate Bill 1963, 2000 Sess. (creating the Alcohol Impaired Minor Responsibility Act); 92d Ill. Gen. Assem., Senate Bill 4, 2001 Sess. (creating the Alcohol Impaired Minor Responsibility Act); 92d Ill. Gen. Assem., House Bill 1990, 2001 Sess. (creating the Underage Alcoholic Liquor Use Liability Act). These attempts to create a new cause of action did not succeed. We do not view such failed attempts as inaction on the part of the legislature. Rather, we view it as evidence that the legislature continues to debate and consider the merits and contours of any form of social host liability.

Moreover, "[i]t is a fundamental principle that '[w]here the legislature chooses not to amend a statute after a judicial construction, it will be presumed that it has acquiesced in the court's statement of the legislative intent.' " *Zimmerman*, 183 Ill. 2d at 49-50, quoting *Miller v. Lockett*, 98 Ill. 2d 478, 483 (1983). Although the legislature continues to amend the Dramshop Act in other respects (see Pub. Act 90—111, eff. July 14, 1997), the legislature has made no change to the statute indicating that the civil liability provided therefor is not intended to preempt the entire field of alcohol-related liability. To change course now would amount to an

amendment of the statute itself. See *Charles*, 165 Ill. 2d at 492, citing *Froud v. Celotex Corp.*, 98 Ill. 2d 324, 336 (1983).

Plaintiff maintains that she is not asking this court to "open the flood gates" regarding social-host liability. We note, however, that the cause of action plaintiff would have us recognize is broader than the proposed cause of action we declined to recognize in *Charles*. Under the facts of *Charles*, liability could have been limited to situations involving underage drunk driving. See *Charles*, 165 Ill. 2d at 505-07 (McMorrow, J., dissenting). In the present case, however, plaintiff seeks to impose liability for *any* injuries proximately caused by the adult provision of alcoholic beverages to a minor. In addition, there was no indication in *Charles* that the social-host defendants were not themselves of legal drinking age. Plaintiff in the instant case, however, seeks to impose liability upon *any* adult social host, irrespective of whether the social host is of legal drinking age. Brian, the younger of the two remaining defendants, was only 18 years of age at the time of the underlying events, three years younger than the legal drinking age of 21 years. Thus, plaintiff actually proposes a broad and sweeping change to this area of the law by proposing that all adults—even those adults whom the General Assembly has determined are unable to appreciate sufficiently the risks attendant to alcohol consumption—may be liable in tort for any and all injuries flowing from the provision of alcohol to minors.

Even if the cause of action plaintiff would have us recognize in the present case was more narrowly tailored, we do not agree with plaintiff that the "flood gates" would not be opened. We recognized in *Charles* that the adoption of social host liability in that case would open up a " 'Pandora's Box' of unlimited liability," as any person who might conceivably qualify as a social host

was made the target of a lawsuit. *Charles*, 165 Ill. 2d at 503. We recognized also that, if this court were to adopt social host liability, we would be faced with determining under which of the many possible permutations liability would lie.

> "Should only injured third parties have a cause of action against a social host, or should the intoxicated person have one too? Should an exception be created only for minors? If so, should we treat persons under the legal drinking age of 21 as minors, or only those under the age of 18? Should minor or underage social hosts be liable for serving liquor to their similarly situated friends? Should a social host be held liable only when he or she knows that the intoxicated person will drink and drive, or should the host be liable for all types of alcohol-induced injuries? What actions must a social host take to avoid liability where an intoxicated guest insists on driving home? Is calling a cab sufficient, or must the police be notified? *The flood of injured litigants that would inevitably crowd the Illinois courts would demand answers to these questions and many others.*" (Emphasis added.) *Charles*, 165 Ill. 2d at 494.

The adoption of social host liability in this case would likewise raise numerous questions to which the flood of litigants would demand answers. Should social hosts be liable only for "knowingly" providing alcohol to minors, or should the social host's conduct be judged by what he or she "should have known"? For example, should parents be liable for the consumption of alcoholic beverages in their home if they "should have known" that their 17-year-old child would have a party in their absence? What measures should parents take to ensure that access to liquor in the home is sufficiently restricted in order to avoid liability for illegal activities that occur in their absence? Should liability attach outside the home to social gatherings such as picnics, weddings and other events? Should the social host be liable even where the intoxicated minor's parents are present at the social gathering? Should liability attach where the minor

consumes a negligible amount of alcohol, is clearly not intoxicated, but has an adverse reaction due to a medical condition unknown to the social host? Should the liability of social hosts be unlimited, or subject to the same limitation applicable to liquor vendors?

The members of our General Assembly, elected by the citizens of this state, are best able to resolve such issues comprehensively, taking into account the significant social and economic consequences of any course of action. They are best equipped to determine whether a change in the law is both desirable *and* workable, and if so, under what circumstances. *Charles*, 165 Ill. 2d at 493-94. Thus far, the General Assembly has determined that civil liability for alcohol-related injuries is limited to two groups of defendants: (1) dramshop owners, and (2) persons 21 years of age or older who pay for a hotel or motel room knowing that the room will be used by underage persons for the unlawful consumption of alcohol. The liability of these defendants is limited and extends only to third parties, and not to the intoxicated person. 235 ILCS 5/6—21(a) (West 2000). The General Assembly has otherwise elected to treat the possession and consumption of alcohol by persons under the legal drinking age as a criminal matter. See 235 ILCS 5/6—16(a)(i) through (a)(iii) (West 2000) (making it a Class A misdemeanor for licensees and other persons to sell, give or deliver alcoholic liquor to any person under the age of 21); 235 ILCS 5/6—16(a) (West 2000) (making it a Class A misdemeanor for any person under the age of 21 to use false identification to procure alcoholic liquor or to have any alcoholic liquor in his or her possession on any street, highway or public place); 235 ILCS 5/6—16(a—1) (West 2000) (making it a Class A misdemeanor for any parent or guardian to permit his or her residence to be used by an invitee of the parent's child or the guardian's ward, if the invitee is under the age of 21, in a manner that would

violate the statutory prohibitions on the sale and possession of alcohol); 235 ILCS 5/6—16(c) (West 2000) (making it a Class A misdemeanor for any person knowingly to permit a gathering at his or her home where that person knows that an individual under the age of 21 is in possession of or is consuming any alcoholic beverage and further knows that the underage individual leaves in an intoxicated condition);[3] 235 ILCS 5/6—16(d) (West 2000) (making it a Class A misdemeanor for any person to rent a hotel or motel room for the purpose of or with the knowledge that such room will be used for the consumption of alcohol by persons under the age of 21 years); 235 ILCS 5/6—20 (West 2000) (making it a Class A misdemeanor for persons under 21 years of age to purchase, accept as a gift, possess or consume alcoholic liquor); 235 ILCS 5/10—1 (West 2000) (making it a Class A misdemeanor for any person under the age of 21 years to represent that he is 21 years of age or over for the purpose of buying, accepting or receiving alcoholic liquor from a licensee).

In sum, plaintiff has not provided any principled basis for this court to revisit its decision in *Charles* and depart from the doctrine of *stare decisis*. Plaintiff cannot identify any compelling change in circumstance since our decision was filed and has simply reargued points already considered and rejected. Accordingly, we adhere to our decision in *Charles*: apart from the limited civil liability provided in the Dramshop Act, there exists no social host liability in Illinois.

### III

Plaintiff argues, in the alternative, that the allegations of the complaint fall within an exception to the

---

[3]We recently held that section 6—16(c) of the Liquor Control Act (235 ILCS 5/6—16(c) (West 2000)) is unconstitutionally vague. *People v. Law*, 202 Ill. 2d 578 (2002).

general rule against social host liability, recognized by our appellate court in *Quinn v. Sigma Rho Chapter of Beta Theta Pi Fraternity*, 155 Ill. App. 3d 231 (1987), and *Haben v. Anderson*, 232 Ill. App. 3d 260 (1992).

In *Quinn*, an 18-year-old university fraternity pledge suffered neurological damage and partial disability as the result of consuming excessive amounts of alcohol during an initiation ceremony. The pledge sued the fraternity under common law negligence principles. The trial court dismissed the complaint; the appellate court reversed. The appellate court recognized that "[t]he law in Illinois appears well settled that the legislative action in adopting the Dramshop Act [citation] has preempted the field of liability relating to alcohol" and that "this preemption extends to social hosts who might provide intoxicating beverages: adult to adult, adult to minor, and minor to minor." *Quinn*, 155 Ill. App. 3d at 235. Nonetheless, the appellate court concluded that the complaint stated a cause of action based on two factors: (1) the plaintiff was required to drink to intoxication in order to become a member of the fraternity; and (2) the fraternity's conduct violated the hazing statute (Ill. Rev. Stat. 1985, ch. 144, par. 221), which the legislature adopted to prevent the embarrassment or endangerment of youth through thoughtless and meaningless activity. *Quinn*, 155 Ill. App. 3d at 238.

In *Haben*, an 18-year-old university freshman died from acute alcohol intoxication following an initiation ceremony for new recruits in the Lacrosse Club. The ensuing complaint alleged, *inter alia*, that the members of the club had been involved in hazing the decedent, pressuring him to drink, and causing his intoxication. The trial court dismissed the complaint, finding that the allegations did not fit within the narrow exception announced in *Quinn* in that the plaintiff had failed to allege that the decedent was "required" to drink to

intoxication to be initiated into the club. *Haben*, 232 Ill. App. 3d at 263. The appellate court reversed, finding the plaintiff's allegation of a *de facto* requirement for drinking was sufficient to satisfy the *Quinn* standard. *Haben*, 232 Ill. App. 3d at 266.

Plaintiff in the instant case argues that the exception to social host liability recognized by *Quinn* and *Haben* survived this court's decision in *Charles* and that the allegations of the complaint bring this case within the *Quinn-Haben* framework. Plaintiff maintains that, similar to the circumstances present in *Quinn* and *Haben*, defendants here coerced Elizabeth, a minor, into consuming a dangerous amount of alcohol, thereby violating a statute specifically designed to prevent adults from endangering children. Specifically, plaintiff cites section 2a of the Neglected Children Offense Act, which makes it a Class A misdemeanor to contribute to the delinquency of a child. 720 ILCS 130/2a (West 1996). According to the allegations of the complaint, Michael, the older of the two remaining defendants, was convicted of violating this statute for his role in Elizabeth's intoxication. The appellate court rejected plaintiff's argument, concluding that the exception to the rule against social host liability carved out by *Quinn* and *Haben* did not survive this court's decision in *Charles* and, in any event, the allegations of the complaint did not fit within the *Quinn-Haben* exception. 322 Ill. App. 3d at 773.

We find it unnecessary to consider whether the so-called "exception" to the rule against social host liability recognized by *Quinn* and *Haben* is compatible with our decision in *Charles* because the present case simply does not come within the reach of these two appellate opinions. As discussed above, *Quinn* and *Haben* addressed the limited situation in which a college fraternity, or similar college organization, requires those seeking membership to engage in illegal and dangerous activities, in violation

of the hazing statute. In contrast, the present case presents the factually distinct scenario in which a minor, at a private residence, is allegedly pressured to drink to excess, in violation of the delinquency statute.

We note that our appellate court, in *Goodknight v. Piraino*, 197 Ill. App. 3d 319 (1990), expressly rejected the extension of the *Quinn-Haben* analysis to situations other than those involving a college hazing incident. In *Goodknight*, the plaintiff, who was 18 years of age, attended a Valentine's Day party promoted by the Village of Royal and held in the village community building. Liquor was sold at the party. The plaintiff became intoxicated and left the party with her male companion, who drove the plaintiff's car. The plaintiff later attempted to drive home and crashed the vehicle, sustaining permanent injuries. The plaintiff sued various individuals and entities, including the village, alleging negligence, willful and wanton misconduct, and a violation of the Dramshop Act (Ill. Rev. Stat. 1987, ch. 43, par. 135). The trial court dismissed the cause of action as to the village and certain other defendants. On appeal, the plaintiff argued that the *Quinn* analysis should apply and that her cause of action should not have been dismissed. She maintained that, as an innocent minor, she was pressured and "required" to drink in order to join the "fraternity" of her peers at the dance. *Goodknight*, 197 Ill. App. 3d at 325. The appellate court rejected this argument. "*Quinn* did not recognize an exception to the [Dramshop] Act for every 18-year-old who 'feels pressured' to drink, but a narrow one—a duty on the part of fraternities and sororities to refrain from requiring participation in such acts ***." *Goodknight*, 197 Ill. App. 3d at 325.

Thus, we agree with the appellate court in the present case that it would be a "dramatic expansion" of *Quinn* and *Haben*, assuming their continuing viability, to

find that plaintiff has stated a cause of action here for negligent provision of alcohol. 322 Ill. App. 3d at 775. We therefore conclude that counts I, II, V and VI of the complaint were properly dismissed.

## IV

We next consider whether, as defendants argue, those counts of the complaint alleging a "voluntary undertaking" by Michael and Brian are fatally defective. Generally, pursuant to the voluntary undertaking theory of liability, "one who undertakes, gratuitously or for consideration, to render services to another is subject to liability for bodily harm caused to the other by one's failure to exercise due care in the performance of the undertaking." *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 239 (1996).

Plaintiff alleged that Michael and Brian voluntarily undertook to care for Elizabeth after she became unconscious, by placing her in the downstairs family room in order to observe and care for her; that they, in fact, observed her vomiting profusely and making gurgling sounds while in the family room; and that they checked on her during the early morning hours of June 16, 1997, at which time they removed her vomit-saturated blouse, and placed a pillow under her head to prevent aspiration. Plaintiff further alleged that Michael and Brian did not seek medical attention for Elizabeth and prevented other persons in the home from calling 911 or seeking other medical care. Michael and Brian also allegedly refused to drive Elizabeth home or to the hospital and refused to call her parents. While Elizabeth was still unconscious, Michael and Brian removed her from their home. The appellate court found the foregoing allegations were sufficient to withstand defendants' section 2—615 motion (735 ILCS 5/2—615 (West 2000)).

As an initial matter, defendants argue that plaintiff's voluntary undertaking theory is simply an attempt to

circumvent the rule against social host liability set forth in *Charles*. This argument fails. The liability of defendants, if any, is not contingent on their status as social hosts. Indeed, it is irrelevant for purposes of plaintiff's voluntary undertaking counts whether defendants were acting as social hosts on the evening of June 15, 1997, and supplied the alcohol which Elizabeth consumed. Rather, based on the allegations of the complaint, defendants' liability arises by virtue of their voluntary assumption of a duty to care for Elizabeth after she became unconscious, irrespective of the circumstances leading up to that point. Thus, plaintiff's voluntary undertaking theory does not circumvent the rule against social host liability.

In a related argument, defendants maintain that there is no special relationship between a social host and a guest which would impose a duty upon the social host to seek medical assistance. See *Estate of Ritchie v. Farrell*, 213 Ill. App. 3d 846, 849 (1991); *Zamiar v. Linderman*, 132 Ill. App. 3d 886, 890 (1985). This argument, like the one before it, necessarily fails. Plaintiff did not allege that defendants were under a legal duty to seek medical assistance for Elizabeth, or to otherwise care for her, by virtue of their status as social hosts or their relationship with Elizabeth. Plaintiff alleged that defendants *voluntarily* undertook to care for Elizabeth. "By undertaking to act defendant[s] became subject to a duty with respect to the manner of performance." *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 85 (1964). In other words, having undertaken to care for Elizabeth, defendants were obligated to exercise "due care" in the performance of that undertaking. See *Nelson*, 31 Ill. 2d at 86; see also Restatement (Second) of Torts § 323, at 135, § 324, at 139 (1965) (actor must exercise "reasonable care").

Defendants next argue that, even if this court accepts

a voluntary undertaking theory of liability, their duty is limited to the extent of the undertaking. See *Rhodes*, 172 Ill. 2d at 239; *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32 (1992). Defendants explain that where, as here, a host merely permits an intoxicated guest to "sleep it off" on the host's floor, the host does not thereby assume an open-ended duty to care for the guest and assess the guest's medical condition. Although we agree with these statements as a general proposition, based on the allegations of the complaint, defendants here did more than simply make their floor available to Elizabeth to "sleep it off." Rather, defendants placed her in the family room; checked on her periodically; took measures to prevent aspiration; removed her soiled blouse; and prevented other persons present in the home from intervening in Elizabeth's behalf. As alleged by plaintiffs, defendants effectively took complete and exclusive charge of Elizabeth's care after she became unconscious.

Defendants further argue that plaintiff's voluntary undertaking counts must be dismissed because plaintiff has failed to allege any act by defendants which "increased the risk of harm" to Elizabeth. In support of this argument, defendants direct our attention to section 323 of the Restatement (Second) of Torts, which states:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, *if*

(a) *his failure to exercise such care increases the risk of such harm*, or

(b) the harm is suffered because of the other's reliance upon the undertaking." (Emphasis added.) Restatement (Second) of Torts § 323, at 135 (1965).

Defendants note that section 323 of the Restatement (Second) of Torts was quoted favorably by this court in *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32 (1992).

Defendants contend that the requirement set forth in section 323(a)—that a defendant's conduct must have increased the risk of harm to the other—applies to plaintiff's cause of action, and that defendants' limited conduct, as alleged in the complaint, does not satisfy section 323(a).

We disagree. The allegations of the complaint, if proven, satisfy any requirement that defendants' conduct must have "increased the risk of harm" to Elizabeth for liability to attach. In reaching this conclusion, we are guided by the more specific provisions of section 324 of the Restatement (Second) of Torts, which sets forth the "Duty of One Who Takes Charge of Another Who is Helpless." Section 324 states:

> "One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by
>
> (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or
>
> (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him." Restatement (Second) of Torts § 324, at 139 (1965).

Section 324 is an application of the rule stated in section 323, where the plaintiff—or in this case, the plaintiff's decedent—is in a helpless situation. Restatement (Second) of Torts § 324, Comment *a*, at 140 (1965). The "bodily harm" for which the actor is liable "may be either a further injury or an increase in the existing injury, due to the improper manner in which the actor is giving the aid or protection, or it may be an aggravation of the original harm which would have been avoided if the actor had exercised reasonable care for the other's safety." Restatement (Second) of Torts § 324, Comment *c*, at 140 (1965). For example, where a defendant delays in sending for aid and the other person's condition

worsens, resulting in his or her death, the defendant may be liable under a wrongful death statute. See Restatement (Second) of Torts § 324, Illustration 2, at 140 (1965).

Here, plaintiff has alleged that defendants failed to summon aid by contacting Elizabeth's parents, failed to otherwise obtain medical assistance that evening or the following morning when she was still unconscious, and prevented other persons from obtaining aid, proximately causing her death. These allegations, liberally construed, sufficiently allege that defendants' conduct "increased the risk of harm" to Elizabeth.

Finally, defendants argue that their alleged failure to summon medical or other assistance constitutes mere "nonfeasance" and that a breach of the duty imposed by reason of a voluntary undertaking can only be found where there is "misfeasance," unless the plaintiff can demonstrate reliance by the injured party. See *Demos v. Ferris-Shell Oil Co.*, 317 Ill. App. 3d 41, 51 (2000); *Blankenship v. Peoria Park District*, 269 Ill. App. 3d 416, 423 (1994). We agree that the case law frequently distinguishes between nonfeasance and misfeasance where a voluntary undertaking is alleged. See, *e.g.*, *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 418 (1991); *Nelson*, 31 Ill. 2d at 75, 85-86; *Jakubowski v. Alden-Bennett Construction Co.*, 327 Ill. App. 3d 627, 640 (2002); *Mattice v. Goodman*, 173 Ill. App. 3d 236, 240 (1988); *Chisolm v. Stephens*, 47 Ill. App. 3d 999, 1006 (1977). Such distinction, however, does not insulate defendants from liability in this case.

The reason for the distinction between nonfeasance and misfeasance has been explained as follows:

> "The early development of the law, and particularly of the forms of action of case and assumpsit, led to a distinction, as to tort liability, between 'misfeasance' and 'nonfeasance.' A defendant who actually entered upon the performance of his undertaking became liable, in an action

on the case, for harm to the plaintiff which resulted from his negligent performance, whereas one who *never commenced performance at all* was not liable in such an action for his failure to do so. The mere breach of a promise, without more, was regarded as 'non-feasance,' for which any action must be in assumpsit, upon the contract and upon proof of a consideration for the promise, rather than on the case under any theory of tort liability." (Emphasis added.) Restatement (Second) of Torts § 323, Comment on Caveat *d*, at 138 (1965).

See also W. Keeton, Prosser & Keeton on Torts § 56, at 373-82 (5th ed. 1984).

Importantly, plaintiff's theory in this case is *not* that defendants failed to perform *at all* and are liable for their nonfeasance. Plaintiff's theory is that defendants *negligently performed* their voluntary undertaking and are liable for their misfeasance. Although defendant's alleged failure to summon medical assistance is itself inaction, it is also one of the ways in which plaintiff claims defendants negligently performed their voluntary undertaking to care for Elizabeth, which is affirmative misconduct. As one legal commentator noted:

"Failure to blow a whistle or to shut off steam, although in itself inaction, is readily treated as negligent operation of a train, which is affirmative misconduct; an omission to repair a gas pipe is regarded as negligent distribution of gas; and failure to supply heat for a building can easily become mismanagement of a boiler." W. Keeton, Prosser & Keeton on Torts § 56, at 374 (5th ed. 1984).

In any event, defendants overlook that part of the complaint which states that defendants "actually prevented other individuals at the home from calling 911 or seeking other medical intervention." Thus, plaintiff has alleged an affirmative act by defendants, not simply a failure to act.

We conclude, as did the appellate court, that the allegations of plaintiff's complaint sufficiently stated a cause of action based on a voluntary undertaking theory

and that counts III, IV, VII and VIII should not have been dismissed.

## V

As a final matter, we consider defendants' procedural challenge to those counts of the complaint arising under the Survival Act (755 ILCS 5/27—6 (West 2000)).

In their several motions to dismiss, defendants maintained that the counts under the Survival Act can only be properly filed by an executor or administrator of a probate estate, and that the named plaintiff in this case is only the special administrator appointed under the Wrongful Death Act to prosecute claims under that statute. See 740 ILCS 180/2.1 (West 2000). At the time the trial court dismissed plaintiff's second amended complaint (the precursor to the complaint which is the subject of this appeal), the trial court indicated its agreement with defendants on this issue. This was not, however, the court's stated basis for its dismissal of the second amended complaint. The trial court dismissed the complaint on the substantive grounds advanced by defendants. At the same time the trial court dismissed plaintiff's second amended complaint, it granted plaintiff leave to file, within 14 days, an amended second amended complaint. That complaint, which is the subject of this appeal, made only minor revisions to the prior version by adding a few additional allegations. These revisions were not intended to correct the procedural defect identified by defendants and the trial court. It was understood by the parties, prior to the filing of the amended second amended complaint, that the nature of the new allegations would not serve to defeat defendants' section 2—615 motion. Thus, three days after the amended second amended complaint was filed, the trial court dismissed the same with prejudice. Plaintiff thereafter proceeded with her appeal.

In the appellate court, plaintiff did not challenge the

correctness of the trial court's ruling on the procedural issue. Instead, plaintiff asked that, in the event the cause was remanded to the trial court, she be allowed to request leave to amend her complaint in order to have an independent administrator bring the counts pled pursuant to the Survival Act. The appellate court could "see no bar to plaintiff seeking leave, on remand, to amend her complaint to correct this technical defect in compliance with the trial court's ruling." 322 Ill. App. 3d at 779.

Defendants now argue that plaintiff waived any request to amend her complaint by failing to request amendment in the trial court. We disagree. As discussed above, at the same time the trial court indicated its agreement with defendants' procedural argument, the court dismissed plaintiff's second amended complaint on the merits and indicated it would allow plaintiff leave to file an amended second amended complaint simply to include a few additional allegations. The trial court made clear, however, that the additional allegations would not provide a basis to avoid dismissal, and that such revised complaint would be dismissed promptly after filing. Two weeks later, that is precisely what occurred. Thus, it would have been futile for plaintiff, during that two-week period, to seek leave to amend her complaint in order to cure a procedural defect, where plaintiff knew that the complaint would nonetheless be dismissed on substantive grounds. Under these circumstances, we find no waiver by plaintiff.

## CONCLUSION

For the reasons discussed above, we affirm the judgment of the appellate court, which affirmed in part and reversed in part the trial court's dismissal of plaintiff's amended second amended complaint and remanded this matter to the trial court for further proceedings.

*Affirmed.*

JUSTICE RARICK took no part in the consideration or decision of this case.

CHIEF JUSTICE McMORROW, specially concurring:

Plaintiff in the case at bar seeks to impose a form of social host liability that is much broader than the type we rejected in *Charles v. Seigfried*, 165 Ill. 2d 482 (1995). Here, as the majority correctly notes, "plaintiff seeks to impose liability for *any* injuries proximately caused by the adult provision of alcoholic beverages to a minor." (Emphasis in original.) 203 Ill. 2d at 234. In *Charles*, by contrast, we were faced with a more narrow issue: the serving by an adult social host of alcoholic beverages to a minor who became intoxicated, left the social gathering, and was subsequently involved in an auto accident.

I agree with the majority's decision today not to recognize the broader form of social host liability sought by plaintiff in the case at bar. I write separately to re-affirm the views expressed in my dissent in *Charles* that there should be civil liability in situations where an adult social host provides alcohol to a minor who is permitted to become intoxicated and then drive a vehicle. In view of "the present-day reality of the needless carnage and destruction wrought by underage drunk driving" (*Charles*, 165 Ill. 2d at 511 (McMorrow, J., dissenting, joined by Harrison, J.)), I continue to believe it imperative that adult social host liability be imposed for the provision of alcohol to a minor in circumstances such as those presented in *Charles*.