2024 IL App (1st) 231424

THIRD DIVISION
January 31, 2024

No. 1-23-1424

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JAMES SCHRAMM SR., as Special Administrator of the Estate of Michael Schramm, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 22 L 5119 |
| 3258 S. WELLS ST. RESTAURANT, LLC, d/b/a Turtle's Bar & Grill, and THOMAS MANCINE, | ) ) ) ) | Honorable Thomas M. Cushing, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE VAN TINE delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1    Michael Schramm, who worked as a busser for 3258 S. Wells St. Restaurant, LLC, d/b/a

Turtle's Bar & Grill (Turtle's Bar), died after consuming alcoholic beverages, falling, and

sustaining a head injury while on his shift. Michael's brother, James Schramm Sr., sued Turtle's

Bar and its owner on Michael's behalf, under various theories of tort liability arising from the bar's

provision of alcoholic drinks to Michael during his shift.[1] The circuit court ultimately dismissed the case with prejudice. James appeals. For the following reasons, we affirm.

¶ 2                                          BACKGROUND

¶ 3      On appeal, Turtle's Bar does not dispute the following facts.[2] Michael Schramm worked as an independent contractor for Turtle's Bar, where he delivered drinks, cleaned tables, and washed dishes. Turtle's Bar paid him in cash and free alcoholic drinks while he worked. Turtle's Bar's owner, Thomas Mancine, knew that Michael had a severe drinking problem.

¶ 4      On September 28, 2021, Turtle's Bar's employees provided Michael with free alcoholic drinks during his shift. He became heavily intoxicated, fell down, hit his head, and lost consciousness. According to the complaint, Michael's blood alcohol content was three times the legal limit at the time of the fall. He was subsequently taken to the hospital and declared brain-dead. He died on October 2, 2021.

¶ 5      A couple of weeks before September 28, Michael had been hospitalized for alcohol poisoning, apparently after working a shift at Turtle's Bar. James alleges that, prior to the September 28 incident, he had confronted Mancine on multiple occasions regarding Michael's alcoholism. According to James, Mancine acknowledged that Michael had a drinking problem and agreed to stop providing him with alcohol while he worked. Nonetheless, it appears that Mancine and other Turtle's Bar employees continued supplying alcohol to Michael while he worked.

---

[1]As Michael and James are brothers who share the same last name, we refer to them by their first names to avoid confusion.

[2]Turtle's Bar has not included a statement of facts in its response brief. Illinois Supreme Court Rule 341(i) (eff. Oct. 1, 2020) provides that a statement of facts "need not be included" in an appellee's brief unless the appellee deems appellant's presentation of the facts "unsatisfactory." We therefore presume Turtle's Bar agrees with James's presentation of the facts.

¶ 6    James, as special administrator of Michael's estate, sued Turtle's Bar and Mancine. The second amended complaint, filed on March 3, 2023, is the operative complaint in this appeal. The complaint consisted of 16 counts: count I (wrongful death) against Turtle's Bar; count II (Survival Act (755 ILCS 5/27-6 (West 2022))) against Turtle's Bar; count III (willful and wanton wrongful death) against Turtle's Bar; count IV (Survival Act) against Turtle's Bar; count V (willful and wanton wrongful death) against Mancine; count VI (Survival Act) against Mancine; count VII (wrongful death under a theory of "fostering alcoholism") against Turtle's Bar; count VIII (Survival Act) against Turtle's Bar; count IX (willful and wanton wrongful death under a theory of "fostering alcoholism") against Turtle's Bar; count X (Survival Act under a theory of "fostering alcoholism") against Turtle's Bar; count XI (willful and wanton wrongful death under a theory of "fostering alcoholism") against Mancine; count XII (Survival Act under a theory of "fostering alcoholism") against Mancine; count XIII (wrongful death under a theory of failing to render aid) against Turtle's Bar; count XIV (Survival Act) against Turtle's Bar; count XV (wrongful death under a theory of failing to render aid) against Mancine; and count XVI (Survival Act under a theory of failing to render aid) against Mancine. Essentially, James alleged that Turtle's Bar, its employees, and Mancine undertook a duty to refrain from providing Michael with free alcohol, breached that duty, and also breached the duty of reasonable care by failing to render first aid to Michael after his fall. James did not plead any counts under the Liquor Control Act of 1934 (Liquor Control Act) (235 ILCS 5/1-1 *et seq.* (West 2022)), under which section 6-21 is commonly known as the Dramshop Act (*id.* § 6-21), and which governs matters arising from a bar's provision of alcohol.

¶ 7    Turtle's Bar filed a section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2022)), in which Mancine joined. Turtle's Bar argued, essentially, that the "new" causes of action in the

second amended complaint constituted nothing more than a thinly veiled attempt to circumvent the exclusivity of the Dramshop Act. Essentially, James's causes of action were improper because the core factual scenario is covered exclusively by the Dramshop Act, and it would be improper to circumvent it.

¶ 8   The circuit court dismissed the second amended complaint with prejudice as to both Turtle's Bar and Mancine. Though the court did not articulate its reasons for dismissal in the July 6, 2023, order at issue here, it did note, in its February 24, 2023, order dismissing the first amended complaint, that the "gravamen of the Amended Complaint is alleging a tort arising from the Defendant causing decedent's intoxication," the "exclusive remedy [for which is] the Dram Shop Act."

¶ 9   James, as special administrator of Michael's estate, appeals.

¶ 10                                          ANALYSIS

¶ 11   James argues that the circuit court erred in dismissing his complaint because the Dramshop Act does not preempt his common-law causes of action. That is, he contends that he sufficiently pleaded that Mancine voluntarily undertook the duty to refrain from serving Michael alcoholic drinks and that Mancine and other employees failed to exercise reasonable care by not rendering timely aid to Michael after he had fallen at work. He also argues that Mancine and Turtle's Bar employees "fostered" Michael's alcoholism. In response, Turtle's Bar argues that the Dramshop Act preempts common-law causes of actions arising from a bar's provision of alcohol to patrons and employees, that James failed to establish Mancine's voluntary undertaking, and that James also failed to show proximate cause.

¶ 12   James challenges the circuit court's grant of Turtle Bar's motion to dismiss under section 2-615 of the Code of Civil Procedure (*id.*). We review a circuit court's order disposing of a motion

to dismiss *de novo*. *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11. *De novo* review means we engage in the same analysis as the circuit court. *Xuedong Pan v. King*, 2022 IL App (1st) 211482, ¶ 16.

¶ 13    A motion to dismiss under section 2-615 challenges the legal sufficiency of a complaint. *Cochran*, 2017 IL 121200, ¶ 11 (citing *Kanerva v. Weems*, 2014 IL 115811, ¶ 33). In ruling on this motion, the court accepts as true all well-pleaded facts in the complaint, including any reasonable inferences that may arise from those facts. *Id.* "The essential question is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Id.* A court should not dismiss a complaint under section 2-615 "unless it is clearly apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover." *Id.*

¶ 14    We begin with the threshold inquiry of whether the Dramshop Act preempts James's common-law causes of action arising from Turtle's Bar's provision of alcohol to Michael. Illinois adheres to the "historic common law rule *** that there is no cause of action for injuries arising out of the sale or gift of alcoholic beverages." *Charles v. Seigfried*, 165 Ill. 2d 482, 486 (1995). "The rationale underlying the rule is that the drinking of the intoxicant, not the furnishing of it, is the proximate cause of the intoxication and the resulting injury." *Id.* (citing *Cunningham v. Brown*, 22 Ill. 2d 23, 29-30 (1961)). "As a matter of public policy, the furnishing of alcoholic beverages is considered as too remote to serve as the proximate cause of the injury." *Id.* Accordingly, our courts have consistently adhered to the rule that no common-law cause of action exists to impose liability on any provider of alcoholic beverages. *Id.*

¶ 15    Our legislature has, however, created an exception to that general rule by enacting a limited statutory cause of action available to third parties injured as a result of a dramshop's provision of

alcoholic beverages to a person who, after becoming intoxicated, injures the third party. This cause of action is codified in the Dramshop Act, which provides:

> "Every person who is injured within this State, in person or property, by any intoxicated person has a right of action in his or her own name, severally or jointly, against any person, licensed under the laws of this State or of any other state to sell alcoholic liquor, who, by selling or giving alcoholic liquor, within or without the territorial limits of this State, causes the intoxication of such person." 235 ILCS 5/6-21(a) (West 2022).

¶ 16 The Dramshop Act thus abrogated the common-law rule against the imposition of liability related to the provision of alcohol. We construe strictly statutes that abrogate the common-law, "meaning that common-law principles will not be deemed abrogated by the statute unless that abrogation is clearly stated." *Thomas v. Khoury*, 2021 IL 126074, ¶ 14. Applying that axiom to this case, we find no language in the Dramshop Act that suggests our legislature intended to depart from the well-settled common-law principle against the imposition of liability in these cases (outside the scope of the Dramshop Act). In other words, there is no indication in the text of the Dramshop Act that suggests common-law causes of action would now be available to parties injured as the result of a dramshop's provision of alcohol. Moreover, our supreme court has repeatedly held that the Dramshop Act is the exclusive remedy for injuries arising from the provision of alcohol. Here, James never set forth a claim under the Dramshop Act.

¶ 17 In *Cunningham*, a widow sued a tavern after her husband became intoxicated there and committed suicide. *Cunningham*, 22 Ill. 2d at 24. In addition to a claim under the Dramshop Act and a civil action under another section of the Liquor Control Act, she brought a "common-law action against a tavern operator who supplies intoxicating liquor to a person when the supplier knows the consumer has no volition with regard to consuming the intoxicant, therefore causing his

6

intoxication or further intoxication and resulting in injury to the consumer or a third party." *Id.* at 24-25. The supreme court held that the plaintiff could not bring a common-law action, and the Dramshop Act constituted the exclusive remedy against "tavern operators and owners of tavern premises for injuries to person, property or means of support by an intoxicated person or in consequence of intoxication." *Id.* at 30-31. The court engaged in a historical analysis and could not find any common-law remedy against owners and operators of taverns. *Id.* at 28. It then reached the "inescapable conclusion *** that the legislature did not intend the act to be complementary to a common-law right it knew nothing about, but, on the contrary, intended to create a remedy in an area where it believed none existed." *Id.* at 29.

¶ 18    In the wake of *Cunningham*, our supreme court has consistently held that the Dramshop Act is the exclusive remedy for holding providers of alcohol liable for the actions of an intoxicated person. See, *e.g.*, *Simmons v. Homatas*, 236 Ill. 2d 459, 468 (2010); *Wakulich v. Mraz*, 203 Ill. 2d 223, 231 (2003); *Charles*, 165 Ill. 2d at 489-90; *Hopkins v. Powers*, 113 Ill. 2d 206, 211 (1986); *Wimmer v. Koenigseder*, 108 Ill. 2d 435, 440-44 (1985); *Demchuk v. Duplancich*, 92 Ill. 2d 1, 5 (1982); *Graham v. General U.S. Grant Post No. 2665*, 43 Ill. 2d 1, 7 (1969).

¶ 19    Relying on the supreme court decisions in *Simmons* and *Wakulich*, James appears to argue that the Dramshop Act does not preempt an action based on a voluntary undertaking theory of liability. We are unpersuaded that either of these cases lends support to his contention.

¶ 20    In *Simmons*, several decedents' estates' administrators sued a strip club operator for negligence in aiding an intoxicated patron (Homatas) to drive his vehicle home from the strip club. *Simmons*, 236 Ill. 2d at 462-63. Homatas collided with a vehicle, resulting in the deaths of four people; Homatas survived with minor injuries. *Id.* at 462. Despite the general exclusivity of the Dramshop Act, the supreme court allowed the plaintiffs to proceed on their common-law

negligence claim, reasoning that "ejecting Homatas from the club, having the parking valet bring Homatas's car to the front of the club, and assisting him into his vehicle and directing him to drive off constitutes substantial assistance from, or encouragement by, [the strip club] toward Homatas in his tortious conduct." *Id.* at 479. However, the court made it clear that its ruling was very narrow:

"We hold only that where, as here, a defendant is alleged to have *removed* a patron for being intoxicated, places the patron into a vehicle and *requires* him to drive off, such facts are sufficient to state a common law negligence cause of action that is not preempted by the Dramshop Act." (Emphases added). *Id.* at 481.

The *Simmons* decision certainly does not signal a departure from the well-settled common-law rule against the imposition of liability on providers of alcohol. In this case, there is no allegation, nor could there be, that anyone encouraged or assisted Michael in tortious conduct. The consumption of alcohol does not amount to tortious conduct and neither does Michael's subsequent fall. Accordingly, the *Simmons* court's narrow exception is inapplicable to this case.

¶ 21     In *Wakulich*, a teenage girl died after consuming a large amount of alcohol that social hosts provided to her at their house. *Wakulich*, 203 Ill. 2d at 225. The girl's mother filed suit alleging that the hosts breached their voluntarily undertaken duty to care for the girl after she had passed out due to the consumption of alcohol. *Id.* That is, she argued that because the hosts removed the girl's vomit-saturated blouse and placed a pillow under her head to prevent aspiration after noticing that the girl was vomiting and making gurgling sounds, they had voluntarily undertaken to provide reasonable care to the girl. *Id.* at 226-27. Our supreme court agreed, reasoning that the hosts "effectively took complete and exclusive charge of [the girl's] care after she became unconscious" by "plac[ing] her in the family room; check[ing] on her periodically; t[aking] measures to prevent aspiration; remov[ing] her soiled blouse; and prevent[ing] other persons present in the home from

intervening in [the girl's] behalf." *Id.* at 243. In this case, no one took complete and exclusive control of Michael — at most, Mancine promised to refrain from providing Michael with free alcoholic beverages. This does not rise to the level of control contemplated by the *Wakulich* decision. Accordingly, *Wakulich*'s holding does not apply to this case.

¶ 22    James also relies on our appellate court decisions in *Harris v. Gower, Inc.*, 153 Ill. App. 3d 1035 (1987), and *Lessner v. Hurtt*, 55 Ill. App. 3d 195 (1977), in support of his contention that Turtle's Bar should be liable for "fostering alcoholism" and failing to render aid to Michael after his fall. We find these cases distinguishable and therefore unpersuasive.

¶ 23    In *Harris*, a bar patron became intoxicated and unconscious after consuming a large amount of alcohol. *Harris*, 153 Ill. App. 3d at 1036. While still unconscious, the bar's employees placed the intoxicated patron into his car, where he froze to death overnight. *Id.* at 1036-37. The court allowed a negligence cause of action to proceed because it was the negligent act of placing him in peril (that is, in a vehicle in the cold weather), and not the provision of alcohol, that caused his death. *Id.* at 1038. In this case, Turtle's Bar's employees engaged in no act subsequent to the provision of liquor to Michael that placed him in peril. Again, Michael's consumption and fall were of his own accord.

¶ 24    *Lessner* is equally inapposite. That case held only that the "duty of a tavernkeeper to see that his guests are free from annoyance or injury [citations] much as any possessor of land must act as a reasonable man in avoiding harm to invitees from negligence or even intentional attacks of third persons." *Lessner*, 55 Ill. App. 3d at 197. Here, there is no allegation that Turtle's Bar's employees even encouraged Michael's tortious conduct (as he was not engaged in tortious conduct), let alone intentionally attacked Michael. Accordingly, that case offers no support to James's contention.

¶ 25 In sum, we find that none of the limited exceptions in these cases applies to this case. Accordingly, in this case, we adhere to the well-settled general rule that the Dramshop Act provides the exclusive remedy for causes of action stemming from the provision of alcohol. Having held that the Dramshop Act is the exclusive remedy that James can pursue in this case, we need not reach the questions of whether he sufficiently pleaded his common-law theories of liability, and we need not address proximate cause either. The circuit court correctly held that the Dramshop Act provides the exclusive remedy for James's case. Consequently, it did not allow James to circumvent the Dramshop Act, and it did not err in dismissing his common-law causes of action.

¶ 26                                 CONCLUSION

¶ 27 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 28 Affirmed.

---

### *Schramm v. 3258 S. Wells St. Restaurant, LLC*, 2024 IL App (1st) 231424

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-L-5119; the Hon. Thomas M. Cushing, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Jeffrey S. Deutschman, of Deutschman & Skafish, P.C., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Matthew G. Burke, of Heineke & Burke, LLC, of Chicago, for appellees. |

---